STATE OF TENNESSEE, DEPARTMENT OF HIGH-
WAYS AND PUBLIC WORKS, by CITY OF MEM-
PHIS, Plaintiff in Error, v. TEXACO, INC., Defendant
in Error.—354 S. W. (2d) 792.

Western Section at Jackson.   December 20, 1961.

Petition for Certiorari Denied by Supreme Court, March 7, 1962.

James M. Manire and Frank B. Gianotti, Jr., Memphis, for plaintiff in error.

Leo Bearman, Sr., and Leo Bearman, Jr., Memphis, for defendant in error.

BEJACH, J. This cause involves a condemnation suit filed by the State of Tennessee, acting by and through the City of Memphis, for highway purposes, under the provisions of Chapter 216, Public Acts of 1959. This appeal is with reference to the leasehold of Texaco, Inc. in property located at the intersection of U. S. Highway 70 and White Station Road in Shelby County, Tennessee. As originally filed, Bernard L. Cohn, Jr. and his wife, Louise Halle Cohn, as owners of the fee simple interest in said property, were made parties defendant along with The Texas Company, lessee, and Albert Stewart Thomas and Jesse Collins Thomas, as sublessees thereof. The Texas Company is now known as Texaco, Inc.

Under the provisions of Chapter 216, Public Acts of 1959, the State of Tennessee paid into court the total sum of $64,150, of which it allotted $61,750 as compensation for the ownership of the fee simple interest, and $1,200 each to the lessee of the property and the sublessee for their respective interests in said property. Bernard

L. Cohn, Jr. and wife and the sublessees accepted the sums allocated to them for their respective interests and have withdrawn said sums from the Registry of the Court. Consent orders have been entered divesting their respective titles and closing the case as to them. The Texas Company, or Texaco, Inc., as it is now called, refused, however, to accept the $1,200 allotted to it as compensation for its leasehold, and demanded a jury to try the issue of fair value of its leasehold. The value of the leasehold interest of Texaco, Inc. thus came to be the sole question tried to a jury in the lower court and the sole question involved on this appeal. The jury returned a verdict of $8,941, consisting of $6,956 fixed as the value of the lease, and $1,985 awarded for the expense of removing, transporting and installing equipment of Texaco, Inc. The $1,200 allocated as the value of the leasehold interest of Texaco, Inc. had been withdrawn pursuant to an order of court which provided that ''same shall be credited on any verdict in excess of that sum awarded to Texaco, Inc.'', and that if the verdict should be less than $1,200, a judgment might be entered against Texaco, Inc. for the excess withdrawn. After a motion for a new trial had been overruled, the State perfected its appeal in the nature of a writ of error to this Court. The parties will be referred to as the State and Texaco, Inc., or called appellant and appellee.

It is the contention of counsel for the State, as set out in their brief filed in this cause, that the total value of the fee simple title to the property here involved is $62,950, consisting of the amounts awarded to the owner of the fee simple title and the sublessee; and that the leasehold interest of Texaco, Inc. has no value, because the condemnation proceeding relieved it of the obliga-

tion to pay in rent more for the unexpired portion of the leasehold than same is worth. The record discloses that the leasehold in question was originally for a period of ten years, of which approximately three years and eleven months were unexpired, and that it provided for options of renewal which entitled the lessee to two additional periods of five years each. The monthly rental which Texaco, Inc. was obligated to pay was $350.00, and at the time the property was condemned Texaco, Inc. was receiving as rental from the sublessees the sum of $25.00 per month, plus 1¼ cents per gallon of gasoline pumped. It is the contention of appellant that the average volume of gasoline pumped during the entire time that the lease had been in effect was less than 20,000 gallons per month, that this average had declined in 1959 and in 1960, and that the rental paid by the sublessee to the lessee was, therefore, less than the rental paid by the lessee. Applying the general principal that, ''profits'' cannot be shown in condemnation cases, the trial court refused to permit the State to bring out these facts. This ruling is complained of by one of appellant's assignments of error.

In this Court, the State, as appellant, has filed three assignments of error.

Assignment I complains because the trial judge overruled a motion for a directed verdict. Assignment II complains of the refusal of the trial court to grant a request for special instruction to the jury; and Assignment III complains of the refusal of the trial judge to admit evidence showing the rental received by Texaco, Inc. from its sublessees, and the alleged limited productivity of Texaco, Inc.'s sublease.

We will discuss these assignments of error in the order named.

■ The State's contention that a directed verdict in its favor should have been granted is based on the claim that the only testimony of value of the unincumbered fee was that offered on behalf of the State which placed that value at $62,950. It is the State's contention that proof of the value of the lease had no relation to the value of the fee simple interest which had been absorbed by the owner of the fee and the owner of the sublease, and consequently that its motion for a directed verdict should have been granted. We cannot agree with this contention of the State, because the record discloses some evidence showing a higher valuation of the unincumbered fee than that offered on behalf of the State.

From the testimony of Texaco, Inc.'s witness, Payson Moreland, as brought out on cross examination by Mr. Manire, we quote as follows:

"Q. I would like to know this—If you will, tell me, Mr. Moreland, What are the elements of value that go in your appraisal?

"A. Into a leasehold?

"Q. A leasehold.

"A. Well, there are many ways of approaching a leasehold interest, and the quickest simplest one generally is to determine, first, the market value of the unincumbered fee. I mean that's usually the basic, the first approach. You can weigh it with other approaches to value, if you wish.

"Q. You didn't follow that system, did you?

"A. Yes, sir; I did.

"Q. I thought you said you didn't appraise the unincumbered fee, if I understood you correctly a while ago. Believe me, I'm not trying to argue with you. I might have misunderstood you.

"A. I want it understood that my man here started an appraisal and got a lot of information for me before I got here. I also conferred with a member of the Appraisal Institute here in Memphis, and we agreed and reached an estimate of the market value of that property which, incidentally, was some $7,000 or $8,000 higher than that reached by the appraisers for the State. However, we used the figure that—

"MR. MANIRE: I am going to have to ask that that be stricken as being unresponsive.

"THE COURT: All right, I think the Court will have to sustain that and strike that."

From the cross examination of witness John Stephen Fineran, by Mr. Manire, we quote as follows:

"Q. Now, let me ask you this. What elements do you consider in arriving at your valuation of this leasehold?

"A. The principal thing you have to consider is the present day value of the land.

"Q. The value of the land is one. What else?

"A. Another thing would be the cost of the improvement or the depreciated value of the improvement.

"Q. Do you know what they are?

"A. Roughly, I estimated the value of the land if it was available today.

"Q. I am talking about improvements.

"A. If the land was available it would sell for $50,000, and the value of the improvements would be in the neighborhood of $25,000, and the cost of the station originally was around between $25 and $27,000.

"Q. The depreciated value of the improvements, would you tell me what that is?

"A. As of June 1960, I would say in the neighborhood of $25,000.

"Q. That is the depreciated value.

"A. Yes, sir.

"Q. We have the value of the land and the depreciated value of the improvements, and you have given me those, what else?

"A. These are the two principal things."

It appears that the testimony first quoted above was stricken by the trial judge, but the second quotation remains in the record. We think it alone constitutes sufficient justification for overruling of the State's motion for a directed verdict. Assignment of Error I is, accordingly, overruled.

■ Assignment of Error II compains of the refusal of the trial judge to grant the following special instructions submitted:

"Gentlemen of the jury I instruct you that the compensation which must be paid by the condemnor, which is the State of Tennessee in this case, for the property condemned, cannot be increased because of the existence of a lease for years outstanding and unexpired at the time of the condemnation, and that the aggregate compensation awarded the owner and the lessee cannot exceed the value of the unincumbered fee."

We think the State was entitled to this instruction. After careful reading of the trial judge's charge, we find nothing therein which even remotely approaches this instruction. On authority of Mason v. City of Nashville, 155 Tenn. 256, 291 S. W. 1074; City of Nashville v. Mason, 11 Tenn. App. 344, and the very recent case of Moulton v. George, 208 Tenn. 586, 348 S. W. (2d) 129, we think the State was entitled to have the value of the leasehold considered as an integral part of the total value of the unincumbered tract of land; and that the refusal of the trial judge to grant this instruction, or otherwise cover same in his general charge, was prejudicial to the State's case.

In Mason v. City of Nashville, 155 Tenn. 256, at page 262-263, 291 S. W. 1074, at page 1076, the Supreme Court, speaking through Mr. Justice Swiggart, said:

"If the value of the unexpired portion of the lease term was not in excess of the rent which the lessee would have been required to pay but .for the condemnation, it is apparent that the release from the obligation to pay further rent would offset the damage to the lessee and no recovery could be awarded him; but we are of the opinion that the

lessee would be entitled in such a case to recover of the condemnor any excess in the value of his unexpired leasehold over and above the rental charges from which the lessee is released by his eviction.''

On a subsequent trial of the same case, which was appealed to the Court of Appeals, Crownover, J., speaking for the Court of Appeals in City of Nashville v. Mason, 11 Tenn. App. 344, at page 352-353, said:

''As stated by the Supreme Court, the lessee is entitled to recover any excess in the value of his unexpired leasehold over and above the rental charges from which the lessee is released by his eviction. In other words, he is entitled to recover the market value of his leasehold interest, less the rent that he must pay to the landlord.

'' 'The right of which a tenant is deprived and for which he is entitled to full compensation is the right to remain in undisturbed possession to the end of the term; and the loss resulting from a deprivation of this right is what he is entitled to recover.' 10 R. C. L. 137, sec. 120.

'' 'The test of the value of the lessee's rights lies in the excess of the sum for which such right will sell over the amount he has agreed to pay for it by way of rental.' 20 C. J. 741. 'If a tract of which the whole or a part is taken for public use possesses a special value to the owner which can be measured by money, he is entitled to have that value considered in the estimate of compensation and damages.' 20 C. J. 741. 'If a tract of which the whole or a part

is taken for public use possesses a special value to the owner which can be measured by money, he is entitled to have that value considered in the estimate of compensation and damages. Compensation is not to be estimated simply with reference to the value of the land to the owner in the condition in which he has maintained it or for the use to which it is at the time applied; but with reference to what its present value is, in view of any use to which it is reasonably adapted.' 20 C. J. 769; Yates [& Donelson Co.] v. [City of] Memphis, 137 Tenn. 642, 194 S. W. 903; Wray v. Knoxville, 113 Tenn. 554, 82 S. W. 471; McKinney v. [City of] Nashville, 102 Tenn. 131, 52 S. W. 781; Nashville Interurban R. Co. v. Seay, 1 Hig. 134.

"But the adaptability of the land for a particular purpose is immaterial unless the present market value is enhanced thereby. A particular use to which the property is adapted or applied, although a proper matter to be considered, is not controlling as to the value, and witnesses may be required to estimate the market value to show its value for other purposes also. 20 C. J. 773-4.

"The use to which the property is devoted at the time of the taking in consequence of which it has a special value to the owner, is a fact which he is entitled to have considered. 20 C. J. 775; Sou[thern] Ry. Co. v. [City of] Memphis, 126 Tenn. 267, 148 S. W. 662 [41 L.R.A., N.S., 828]."

In the very recent case of Moulton v. George et al., 208 Tenn. 586, 348 S. W. (2d) 129, the Supreme Court, speaking through Mr. Justice Burnett, said:

"The theory and argument of the Commissioner are that the effect of this judgment is to make the value of the sum total parts greater than the value of the whole, that is, that the jury by its findings found that the sum total value of the land and incidental damages were $49,000 and that this represented the whole of the property and from it should be deducted the sum of $12,550, the value of the leasehold estate which was part of the whole. This Court, in effect, held that the total compensation to be paid for a tract of land condemned cannot exceed the value of the unincumbered fee, Mason v. City of Nashville, 155 Tenn. 256, 291 S. W. 1074, and that this total compensation must be apportioned between the reversioner and lessee according to their respective interests. Colcough v. Nashville & N. W. R. R. Co., 39 Tenn. 171. In principle this Court likewise made the same determination in Nashville C. & St. L. Ry. Co. v. Heikens, 112 Tenn. 378, 79 S. W. 1038, 1042, 65 L. R. A. 298. In this case the determination was that an injury to leased premises in the possession of a tenant entitles the tenant to a right of action against a wrongdoer on account of the interruption of the enjoyment of his estate, and the lessening the use for the term. The Court held that the value of the leasehold interest should be proved and deducted from the total valuation of the building.

  \*  \*  \*  \*  \*  \*

"The above holdings of our Court are clearly in line with the well established general principle which is so well stated by the Missouri court in City of

St. Louis v. Rossi, 333 Mo. 1092, 64 S. W. (2d) 600, 604, wherein that court said:

" 'The well established general rules of eminent domain seem to be that when a piece of property is taken, in which the ownership is divided into several interests, as between the public and the owners, it is considered one estate; that the public right is exercised upon the land itself without regard to the subdivisions of interest; that the amount of the value of the land to which each one of the owners of the interests is entitled is no concern of the condemnor; that the various owners' interests in the property are transferred to the fund, allowed as damages to compensate them for the injury to the land, which is substituted for the property taken; that the value of the property taken is all that the condemnor must pay, and this value cannot be increased by any contracts or distribution among the different persons owning interests in it; and that the sum of all the parts cannot exceed the whole.'

"This principle of law so well stated, which we have last above quoted, is followed by most jurisdictions in the United States, and probably the only exceptions thereto are where the statutory law of some State is different from that of ours, or requires a different conclusion. For many, many cases cited on this question see 29 C. J. S. Eminent Domain sec. 197, page 1102, and the current supplement thereto. This question likewise is annotated in 69 A. L. R. 1263, and 166 A. L. R. 1211. The annotator of these annotations states it as a general rule and

reaches the conclusions so well expressed by the Missouri court, supra.

\*       \*       \*       \*       \*       \*

"We adopt the quotation of the Missouri court as the applicable law to be applied under like situations in condemnation cases in this State."

Although it is our opinion that the State was entitled to have the value of Texaco, Inc.'s leasehold fixed on the basis of the above quoted decision, we do not think that Texaco, Inc. was bound by the State's estimate of $62,950 as the value of the unincumbered fee. Indeed, the State had previously paid into court not the sum of $62,950, but the total sum of $64,150, representing its estimate of the value of all three interests. This indicates a valuation by the State itself of at least $1,200 greater than the amount for which it now contends.

We think the jury was entitled to find as a fact, if it saw fit to do so on proper evidence, both that all interests combined were worth more than was claimed by the State, and also that the leasehold interest of Texaco, Inc. was worth more than was claimed by the State. Of course, under proper instructions, and with proper evidence before it on which to base such finding, the jury might also have found that the leasehold was worth nothing, as was claimed by the State at the hearing, or less than the amount paid into court by the State·as compensation for the taking of that leasehold. Assignment of Error II is sustained.

■   Assignment of Error III complains of the rulings of the court in refusing to admit evidence showing the rental received by Texaco, Inc. from its sublessees,

offered for the purpose of showing the limited productivity of Texaco, Inc.'s lease. It was also offered for the purpose of contradicting and discrediting the testimony of Payson Moreland, one of Texaco, Inc.'s principal witnesses, who testified that the service station involved had been a good one and was among the top twenty per cent to twenty-five per cent of the stations leased by Texaco, Inc., and that it was necessary to acquire two additional stations to make up for this one when it was taken by the State in this case.

We think the testimony offered should have been admitted on both grounds. Ordinarily profits are not admissible in evidence in a condemnation case; but peculiar circumstances of any particular case may make such testimony admissible. On the authority of Lebanon & Nashville Turnpike Co. v. Creveling, 159 Tenn. 147, 17 S. W. (2d) 22, 65 A. L. R. 440, we think such testimony was competent in the instant case. Condemnation of properties and franchise of a turnpike company was involved in the Creveling case, and proof of prospective receipts and profits for the unexpired nine and one-half years of the franchise there involved were admitted in evidence. In disposing of this question, in that case, the Supreme Court, speaking through Mr. Justice Chambliss, later Chief Justice, said:

"While we hold that net income, present or prospective, is not controlling, evidence thereof is altogether competent; the weight to be given such evidence as may be adduced being for the jury, in connection with all other material evidence.

\*     \*     \*     \*     \*     \*

"In this connection, however, it may be well to enumerate some of the elements of value which the record discloses did go to the jury, and quite properly;

\*    \*    \*    \*    \*    \*

"(3) The net income, or clear earnings, those shown in the past, and those reasonably indicated for the future, not estimated alone on distributions to stockholders; but this factor deserves recognition, particularly in valuing all enterprises of this character, where the line in accounting between replacement, or improvement by permanent additions and repairs for temporary upkeep, is necessarily uncertain, and must often be drawn arbitrarily, and may be governed by caprice or interest." Lebanon & Nashville Turnpike Co. v. Creveling, 159 Tenn. 160, 172, 17 S. W. (2d) 26, 29.

We think that Assignment of Error III must be sustained.

In the Creveling case, the testimony as to profits was introduced for the purpose of establishing fair case market value, whereas, in the instant case such testimony was offered as tending to show lack of such value. The principle involved is the same, however, and equally authorizes admission of the evidence. In Moulton v. George, 208 Tenn. 586, 348 S. W. (2d) 129, the cause was remanded for new trial, not only as to the value of the fee simple interest and the reversioner's share of same, but, also, as to the value of the leasehold there involved; and this, in spite of the fact that no complaint had been made on appeal as to the amount awarded for the value of the leasehold. In the instant case, the sustaining of

two of appellant's assignments of error makes necessary a remand for new trial. Such new trial may be had with proper instructions given to the jury with reference to relating the value of the leasehold taken to the total value of the unincumbered freehold, and otherwise in conformity with this opinion.

The costs of the appeal will be adjudged against the appellee, Texaco, Inc. The costs of the lower court may await the final outcome of the cause in that court.

Avery, P. J. (W.S.), and Carney, J., concur.