# GALLATIN HOUSING AUTHORITY v. MRS. UNA CHAMBERS et al.—362 S. W. (2d) 271.

Middle Section. July 27, 1962.

Certiorari Denied by Supreme Court October 4, 1962.

Robert Brinkley, Gallatin, Elkin Garfinkle, Denny, Leftwich & Osborn, Nashville, for appellant.

W. T. Goodall, Jr., Fred A. Kelly, III, Gallatin, for appellee.

I

SHRIVER, J. This is a condemnation proceeding in which the Gallatin Housing Authority took certain land belonging to the defendant, Una Chambers, which property, at the time of the taking, was leased to the defendant Kop-Ron Corporation and said lease had 81 months of its term remaining.

On appeal from an award of the jury of view the cause was tried in the Circuit Court before a jury but a new trial was granted and the cause came on to be heard before Honorable W. P. Puryear, Circuit Judge, without the intervention of a jury, on April 17th and 18th, 1961, resulting in a judgment in favor of the defendants for the value of the land taken, plus incidental damages to the owners and tenant as follows:

$4,200.00 to Una Chambers and husband for the land taken, $3,000.00 for incidental damages to the remaining land as the result of the taking, or a total to Una Chambers and husband of $7,200.00. To Kop-Ron Corporation for the leasehold taken, $2,800.00 plus $500.00 incidental damages to the remaining leasehold as the result of the

taking, and $3,700.00 moving expenses to said corporation, for a total of $7,000.00 to said Kop-Ron Corporation. The Court further found that the Gallatin Housing Authority should pay interest on $11,200.00 from the date of the taking, it having previously paid into Court the sum of $3,000.00.

From the foregoing judgment and decree the Kop-Ron Corporation (Kop-Ron Machine Company, Inc.) has appealed and has assigned errors.

Hereinafter the parties will be referred to as appellant and appellee or Kop-Ron and Housing Authority, respectively, Kop-Ron being the appellant.

The right of the Housing Authority to condemn the lands of the defendants was conceded and this left the single issue below as to what sums of money the defendants were entitled to as the result of the taking of the property by the plaintiff.

## II

### Assignment of Error

There is a single assignment of error as follows:

"The Trial Court erred in finding the leasehold estate of the defendant, Kop-Ron Corporation, taken and incidentally damaged, to entitle the defendant to an award of but Three Thousand Three Hundred ($3,300.00) Dollars."

Counsel for appellant in support of this assignment states:

"This was error because the substantially undisputed testimony was as follows:

"(1) The defendant, Kop-Ron Corporation, held a lease on the premises at $80.00 monthly to expire October 15, 1966.

"(2) Kop-Ron Corporation, at its own expense, had substantially improved the premises leased, constructing additional buildings and structures on the property.

"(3) Kop-Ron Corporation was utilizing the whole property leased, and for its business purpose needed the entire property. Proof offered by the petitioner indicated that, if anything, said defendant needed or could have advantageously used additional land in connection with it's operation.

"(4) The property remaining after the taking of approximately one-fifth thereof was in area insufficient for the continued business operation of the tenant. The parties defendant were not in dispute as to the effect of the taking on Kop-Ron's ability to economically use the remaining property and the parties presented to the Court no question as to the allocation of the damage occasioned by the taking. Under all the evidence, Kop-Ron Corporation was entitled to the damage to the premises for the term of its lease while the landlord was entitled to the damage to the reversion.

"(5) The stipulated rent was in the amount of $80.00. The value of the leasehold as improved was shown to be substantially in excess of that figure by every witness testifying as to that question. The defendant submits that the economic value of the lease was as fixed by the witness Thomas W. Wrenne,

$5,978.00 per year, less the contract rent, $960.00 per year, an annual profit of $5,018.00.

"(6) The value of the leasehold, eighty-one months remaining in the term, even after discounting the same 10% for cash, would be in an amount exceeding $20,000.00."

## III

## A Summary of the Evidence

The Housing Authority presented its evidence by calling as its witnesses W. S. Chaffin, Jr., Executive Secretary of the Gallatin Housing Authority, Edward M. Draper, a resident of Sumner County who said that he had seen property bought and sold in that County but did not qualify as an expert on real estate values, Felix Treadway, Jr., a resident of Nashville, engaged in the business of real estate appraisals and making mortgage loans, and Charles Lee Hancock, who was engaged in the business of boat building and boat repairs.

Mr. Chaffin, the first witness, testified as to his familiarity with real estate transactions in Sumner County and stated that the taking of the land in question amounted to 5,910 square feet of the subject parcel, leaving 18,980 feet and stated that, in his opinion, the fair market value of the land taken was $3,200.00 He also expressed the opinion that no incidental damage had resulted from the taking.

The witness Draper testified that, in his opinion, the fair market value of the land taken was $4,800.00.

The witness, Felix Treadway, testified that, in his opinion, the market value of the land taken was $2,000.00 plus $1,500.00 for improvements or a total of $3,500.00

and that the value of the leasehold interest taken would be no more than the value of the structure on the land taken or $1,500.00. He also expressed the opinion that incidental benefits would exceed incidental damage occasioned by the taking but modified this opinion on cross-examination.

The witness, Hancock, testified that he was in the boat building business and expressed the opinion that Kop-Ron could carry on its boat building business on the land remaining after the taking.

The testimony offered on behalf of defendant Kop-Ron may be summarized as follows:

James Cron, president of the defendant corporation introduced testimony as to the lease of the property in question. He testified as to the improvements on the land built by Kop-Ron Corporation at a cost of $8,746.27 plus $6,500.00 furnished by the property owner, Una Chambers, or a total of $19,900.20.

He said that the property was worth $80.00 a month when rented and, as improved and utilized at the time of taking, was worth a monthly rental of $300.00. He stated that the land remaining after the taking would not accommodate defendants' boat building business and that it was no longer useful to the corporation. He went into considerable detail both on direct and cross-examination as to his reasons for the necessity of moving the corporation's operation from this land after the taking.

Francis Buescher, chief manufacturing engineer of the Yale and Towne Corporation, a graduate of Mississippi State College with a B.S. degree in civil engineering, and experienced as an engineer, stated that he was familiar

with the Kop-Ron Corporation's business and the feasibility of trying to continue the operation on the land left after the taking and also the cost of removal to a new location. He expressed the definite opinion that the land remaining after the taking by the Housing Authority was not suitable for the continuing operation of the business of Kop-Ron Corporation.

The witness, Tom Wrenne, of Nashville with 35 years experience in the real estate business, which experience was shown to be very extensive, was probably the most thoroughly qualified witness to testify in this record respecting the issue before this Court.

He testified that the property involved here as a freehold prior to the taking had a value of $64,000.00 and went into detail as to the elements used by him in arriving at this figure, as well as the other figures which he gave in his testimony, both on direct and cross-examination. He described the capitalization of income and the manner and motivation provided by income for the purchase and sale of land and discussed the problem of allocation of damages as between landlord and tenant.

As to the land, he testified that it had a value of $21,428.00 while the improvements had a value of $41,026.00 making a total of slightly more than $64,000.00. He appraised the lessor's interest therein at $24,794.00 and the lessee's interest in the leasehold at $5,018.00 a year for 84 months or $26,124.00. Added to this figure was $17,450.00 for improvements making a total of $43,574.00 as the lessee's total interest.

He thus arrived at a figure of $20,426.00 as being the value after taking by subtracting $43,574.00 from $64,000.00 which was the value before taking. He also

testified that $5,000.00 was the value to the owner of the land actually taken and $3,800.00 the damage to the freehold.

Mrs. Troutt testified as to the purchase of comparable property only 50 to 75 feet from that occupied by the defendant Kop-Ron which property was 79 feet by 257 feet and for which she paid $35,000.00.

Mr. Groves, an electrical contractor, testified that he made a bid for moving the defendant's machinery, etc. from its location to a new location at a cost of $8,780.00.

Mr. Denning, a real estate man of experience, testified as to the $80.00 a month rent which the defendant was obligated to pay under his lease, while the reasonable value of the leasehold was $275.00 to $300.00 a month with the improvements on the property at the time of the taking, and testified that the damage to the leasehold would amount to the difference between the $80.00 a month for the remaining 84 months subtracted from the $275.00 to $300.00 a month value for the remainder of the lease.

Mr. Garrott, a contractor and surveyor who was with the State Highway Department as an engineer for 27 years, testified that it would cost $5,000.00 to move defendant's equipment to a new location. He also testified as to the inaccessibility to the proposed new highway because of a wall built in the rear of the property three to six feet high and across the back of same.

Mr. Neel, a real estate broker with considerable experience, testified as to the owners damage stating that the value of the property before the taking was $44,000.00, and after the taking $29,600.00, making a difference of $14,400.00, while the actual value of the land taken was

$4,800.00 with incidental damages to the remainder of $7,400.00. He also testified that the value of the land in question was $20,000.00 plus improvements of $24,000.00, making a total of $44,000.00, less depreciation of $2,200.00.

After consideration of all the foregoing testimony the Trial Judge, as hereinabove stated, allowed the defendant Kop-Ron Corporation, $2,800.00 for the leasehold taken, $500.00 for incidental damages to the remaining leasehold as the result of the taking, and $3,700.00 moving expenses, or a total of $7,000.00.

## IV

■■ Under our authorities a leasehold estate is property for which compensation must be paid when it is appropriated under the law of eminent domain and, as has been stated in several of our cases, the taking of a part of the leased premises may destroy the value of the leasehold. Mason v. City of Nashville, 155 Tenn. 256, 291 S. W. 1074; Nichols, Eminent Domain, 3rd Ed. Sec. 12.42.

In Nichols on Eminent Domain, supra, it is said:

"Apportionment.

"In all cases where property taken for the public use is in multiple ownership, whether such ownership is qualitatively, quantitatively or otherwise considered, each of the owners of an undivided moiety, or an interest in or lien upon the property, has a corresponding right to share in the award.

\* \* \* \* \* \*

"The apportionment of an award in condemnation for premises subject to a lease is generally dependent upon the extent to which the condemnation impugns

the relative rights and obligations of the lessor and the lessee."

In City of Nashville v. Mason, 11 Tenn. App. 344, (352) it was said:

"As stated by the Supreme Court, the lessee is entitled to recover any excess in the value of his unexpired leasehold over and above the rental charges from which the lessee is released by his eviction. In other words, he is entitled to recover the market value of his leasehold interest less the rents that he must pay to the landlord.

" 'The right of which a tenant is deprived and for which he is entitled to full compensation is the right to remain in undisturbed possession to the end of the term; and the loss resulting from a deprivation of this right is what he is entitled to recover.' 10 R. C. L., 137, sec. 120.

" 'The test of the value of the lessee's right lies in the excess of the sum for which such right will sell over the amount he has agreed to pay for it by way of rental.' 20 C. J., 741."

In Mason v. City of Nashville, 155 Tenn. 256, 262, 263, 291 S. W. 1075, 1076, wherein the parties involved in the City of Nashville v. Mason, supra, were first before the Supreme Court which remanded the cause to the Trial Court, and from which the second decision in the Trial Court found its way to the Court of Appeals reported in 11 Tenn. App., supra, among other things, the Supreme Court pointed out that in Post v. Brown, 142 Tenn. 304, 218 S. W. 823, it was said that the destruction of property under lease by the widening of the street operated to

terminate the lease and to relieve the lessees from the obligation to pay rent to the owner after his eviction under the condemnation proceedings. The Court then stated as follows:

"It does not follow, however, that the lessee is to be denied any right to recover damages from the condemnor for the destruction of his leasehold estate. If the value of the unexpired portion of the lease term was not in excess of the rent which the lessee would have been required to pay but for the condemnation, it is apparent that the release from the obligation to pay further rent would offset the damage to the lessee, and no recovery could be awarded him; but we are of the opinion that the lessee would be entitled in such a case to recover of the condemnor any excess in the value of his unexpired leasehold over and above the rental charges from which the lessee is released by his eviction.

"Our own cases support the proposition that a leasehold estate is property for which compensation must be paid when it is appropriated under the law of eminent domain. Colcough v. Nashville & Northwestern R. Co., 2 Head (39 Tenn.) 171, 176; Railroad v. Hunton, 114 Tenn. 609, 88 S. W. 182; Railroad v. Cooperage Co., 16 Tenn. 594, 621, 622, 95 S. W. 171; Chattanooga & Tennessee River Power Co. v. Lawson, 139 Tenn. 354, 375, 201 S. W. 165."

Counsel for both parties state that it is apparent that the Trial Judge limited the recovery of damages both actual and incidental to the value of the part of the property taken. Counsel for the appellant respectfully submit and urge that this is not a correct interpretation of the

law when applied to the circumstances of this case. They urge that the broad statement that there must be an apportionment of the award among the several interests not to exceed the value of the land taken is a true principle that applies where an entire tract is condemned, and it is likewise true that such an apportionment and total valuation is applicable to the direct damages resulting from the taking of part of the land, and such general damage, when apportioned, cannot exceed the value of the land taken. But as was said in State of Tennessee v. Texaco, Inc., 49 Tenn. App. 278, 354 S. W. (2d) 792, the State was entitled to have the value of the leasehold considered as an integral part of the total value of the unencumbered tract of land condemned, and refusal by the trial Judge to so instruct the jury was prejudicial to the state's case.

It is pointed out that where part of the land is taken and general damages are apportioned among several owners, there may remain a fixing of damages incidental to the taking and damages arising from injuries sustained by the owner or owners of the remaining property, and while the amount of these damages cannot exceed the value of the remaining property, they are in addition to the general damages to which the parties may be entitled by reason of the taking of a part of the property.

■ While, as pointed out in Moulton v. George, 208 Tenn. 586, 348 S. W. (2d) 129, the recognized rule is that the total compensation to be paid for a tract of land condemned cannot exceed the unincumbered fee and this total compensation must be apportioned between the reversioner and lessee according to their respective interests, this is not to say that the amount of incidental damages to the owner and lessee is restricted to the

market value of the land taken where only part of a tract is condemned.

Suppose, for example, that I owned a lot on a street or highway which I had leased for a term of years to a filling station operator. The market value of the lot was $10,000.00 at the time of taking. The filling station operator had a thriving business with $9,000.00 net income annually from his operation.

The city or county or state, in order to widen the street or highway, condemned a 5 foot strip across the entire front of the lot and lowered the grade by making a deep cut so as to render the lot inaccessible and, therefore, useless as a filling station location. The value of the 5 foot strip taken for public use was shown to be $1,000.00. Could it be successfully urged that the total damages recoverable by the owner and lessee could not exceed the value of the land taken, or $1,000.00? Of course not.

Incidental damages to the owner and the lessee are not restricted to this amount and the cases do not support such a contention.

In Faulkner v. City of Nashville, 154 Tenn. 145, 157, 285 S. W. 39, 43, the Supreme Court made the following observation:

"In Bauman v. Ross, 167 U.S. 548, 17 S. Ct. 966, 42 L. Ed. 270, it was held that the word 'damages,' in relation to the right of a person to recover compensation and damages for property taken by eminent domain, is of general import, and equivalent to 'compensation'; that it includes more than the mere value of the property taken, for often the main injury is not in the value of the property absolutely lost to the

owner, but in the effect upon the balance of his property of the cutting out of the part taken."

■ We think that a clear preponderance of the evidence in this record is to the effect that the damages awarded and allocated to the defendant, Kop-Ron Corporation, by the Trial Judge are inadequate to compensate said defendant for his actual loss and damage. The other defendant, the owner of the property, did not appeal, therefore, the amount of damages allocated to the owner is not before us for review.

The judgment of the Trial Court will be, accordingly, modified so as to increase the award of damages by the amount of $3,000.00 and this increase will be so allocated as that the Kop-Ron Corporation will be awarded $5,000.00 for the leasehold taken instead of $2,800.00 allowed by the Trial Judge, and $1,300.00 for incidental damages to the remaining leasehold instead of $500.00 allowed below. The award of $3,700.00 for moving expenses, which is not challenged in the record, will remain as awarded by the Trial Court.

As thus modified the judgment of the Trial Court is in all other matters affirmed.

Modified and affirmed.

Humphreys and Chattin, JJ., concur.