STATE of Tennessee ex rel. DEPARTMENT OF TRANSPORTATION, BUREAU OF HIGHWAYS, Robert F. Smith, Commissioner, Plaintiff-Appellee,

v.

Harvey GEE and wife, Mary Virginia Gee, Madison Investments, J. Vaulx Crockett, Trustee, the Equitable Life Assurance Society of the United States, Defendants-Appellants.

Court of Appeals of Tennessee, Middle Section.

Aug. 26, 1977.

Rehearing Denied Oct. 28, 1977.

Certiorari Denied by Supreme Court April 10, 1978.

Rehearing Overruled Oct. 28, 1977. See 567 S.W.2d 470.

Harry S. Lester, Frank Grace, Jr., J. Vaulx Crockett, Nashville, for defendants-appellants.

R. H. Ashley, Jr., Atty. Gen., Clark Tidwell, Nashville, for plaintiff-appellee.

## OPINION

DROWOTA, Judge.

In this case we are confronted with the issue of apportionment of a condemnation

award for a partial taking of property subject to a long-term lease.

On September 26, 1974, the State filed its petition to take by eminent domain a strip of land about six feet wide and adjacent to the roadway at the corner of Old Hickory Boulevard and Gallatin Road in Davidson County. The strip is a part of a parcel of land owned by defendants Harvey and Mary Gee, who are husband and wife. The State deposited $28,650.00 into court as the value of the property, and an order of condemnation and appropriation was entered on November 26, 1974. When the case was tried to the court sitting without a jury on March 29, 1976, the only point of contention was the method of apportionment of the award deposited by the State between the Gees, as owners of the fee, and Madison Investments, as lessees under a long-term lease.

The lease in question was executed on June 15, 1964, by the Gees as lessors and Martin Theatres as lessees. The initial term was 25 years, but the lease contained two 25 year options which, if exercised, could extend the term to the year 2039. The lease provided for rental payments of $2,000.00 a month with an escalator clause, calibrated to the cost of living index, to effect adjustments beginning in 1979. In no event was the rent to fall below $24,000.00 a year. On January 5, 1966, because both parties realized that a partial taking of the property to widen the highway was inevitable, the following amendment to the lease was executed:

> In the event condemnation proceedings be instituted against the leased premises by any public or quasi-public authority to the end that a strip of land up to 25 ft. in width abutting on Old Hickory Boulevard be taken in condemnation, no diminution of rent shall result from such taking. Should, however, a strip of land abutting on Old Hickory Boulevard in excess of 25 ft. in width be so taken in condemnation, then the parties hereto agree that a reduced rental for the remaining portion of the leased premises shall be mutually agreed upon.

In 1968 the lease was bought by defendant Madison Investments, a partnership that spent over $2 million to develop the property and erect the shopping center which currently occupies it. On February 7, 1970, the Gees and Madison Investments executed a substantial amendment to the lease, part of which provided:

> In the event a reduced rental cannot be mutually agreed upon, Lessor and Lessee agree upon a continuation of the same rental with Lessor receiving no portion of the condemnation award.

This and the other provisions of the 1970 amendment were executed primarily to satisfy defendant Equitable Life Assurance Society of the United States, which then loaned Madison over $2 million to develop the property and took a mortgage on the leasehold in the form of a deed of trust to J. Vaulx Crockett as security. Equitable and Madison were in agreement as to how to apportion between them any share of the condemnation award due the lessee, and all parties agreed that the $28,650.00 deposited by the State was fair compensation for the property taken. Thus, only the question of apportionment between lessor and lessee remained for trial.

Only two witnesses gave testimony at the trial. Mary Gee, one of the owners and lessors of the property, testified that she and her husband were entitled to the entire condemnation award, stating that in leasing the land they did not "relinquish ownership" of it. She further stated that it was "understood" between the parties to the lease amendments that those provisions required that the lessors receive the entire award if the property taken was a strip of less than 25 feet in width. The other witness was Howard Gibson, one of the two partners in Madison Investments and a long-time real estate investor and developer with extensive experience in appraising property. His testimony was that Madison had invested $2.55 million in improving the property, and he estimated the value of Madison's interest in the property at $1.25 million. He said that the lease had been extended to 2014 by exercise of the first 25 year option, and that a second 25 year option remained as yet unexercised by Madison. When asked about apportionment of the condemnation award between lessor

and lessee, Gibson said that the lessor's interest could be calculated by adding the present value of the reversionary interest of the property taken to the present value of any rental payments lost on the taken property. The present value of the reversionary interest is calculated by "capitalizing" the $28,650.00 value of the taken property, that is, by determining what amount of capital today would have produced $28,650.00 at a reasonable rate of interest by the assumed time of the lease's termination in 2039. The present value of any lost rental amount would be figured by use of a similar capitalization method. Using this approach and a six per cent interest rate, Gibson concluded that the value of the Gees' reversionary interest in the property taken was presently $668.00. He further concluded that this amount represented the entire extent of their interest, because the lease amendment's provision for no diminution in rent meant there would be no loss of rental payments to be capitalized and added to the total of the Gees' loss. Thus, it was Gibson's opinion that $668.00 of the $28,650.00 award should go to the Gees, and that Madison should get the rest.

After hearing the evidence the court, in its memorandum, stated its belief that the rule in Tennessee requires apportionment in such cases to be made by determining the value of the lessee's leasehold interest, subtracting the rental payments required to be made, and adding on any incidental damages. The court expressed its uneasiness at the lack of evidence upon which to base an apportionment, asserting that it had to "estimate—if not speculate—as to the values of the interests of the parties," and its amended order read in part as follows:

> Although evidence has been offered as to fair market value of the leasehold interest of the defendant lessees, there has been no testimony or proof as to the value of the specific property taken in this instance.

The court nevertheless apportioned the award by giving $1,500.00 to the Gees and the remaining $27,150.00 to Madison, the lessee. It further stated that it construed the lease as not preventing either party from participating in the award. From this decision, the Gees appeal.

The first assignment of error alleges that the trial court erred in construing the lease so as to allow the lessee, Madison, to share in the award. The Gees' position is that the amendments to the lease, quoted above, give them the exclusive right to the entire condemnation award due to the taking of a strip of land less than 25 feet wide. These amendments provided for rental adjustment only if a strip more than 25 feet wide was taken and that, if in that situation no adjustment could be agreed upon, the rent would remain the same but the lessor would receive "no portion of the condemnation award." We can find in these provisions no support, either express or implied, for the proposition that the parties therein agreed that the lessor would take the entire award if less than a 25 foot strip of property was condemned. There is likewise no support for such a strained interpretation to be found in the evidence introduced at trial, assuming that such evidence could be properly considered on the point. The question of who was to get the condemnation award in the event the taking was of a strip less than 25 feet wide is one that is clearly and simply not addressed at all in the lease or its amendments. In the absence of any express provision by the parties, Tennessee law requires an apportionment of the award according to the value of the respective interests of lessor and lessee in the property taken. See *Shelby County v. Barden,* 527 S.W.2d 124 (Tenn. 1975); *Mason v. City of Nashville,* 155 Tenn. 256, 291 S.W. 1074 (1927). We thus overrule this assignment of error and affirm the trial court's construction of the lease and interpretation of the law requiring both the Gees and Madison to share in the condemnation award.

In their second and final assignment of error, the Gees contend that the trial court erred in making an apportionment of the award when there was no evidence to support a proper apportionment. In Tennessee, condemned land is to be valued as one estate and a fair market value fixed for the taken property as a whole before apportionment of that amount is made among the various interests in the property. *Moulton v. George,* 208 Tenn. 586, 348 S.W.2d 129 (1961); *State v. Texaco,*

*Inc.,* 49 Tenn.App. 278, 354 S.W.2d 792 (1961). Apportionment between lessor and lessee is accomplished by determining the value of the latter's interest in the taken property, which in turn is calculated by determining the fair rental value of that property for the unexpired term of the lease and subtracting the rent that would actually have been paid for it by the lessee during that term. *Shelby County v. Barden,* 527 S.W.2d 124 (Tenn.1975); *Moulton v. George, supra; Mason v. City of Nashville,* 155 Tenn. 256, 291 S.W. 1074 (1927); *Gallatin Housing Authority v. Chambers,* 50 Tenn.App. 441, 362 S.W.2d 270 (1962); *State v. Texaco, Inc., supra; City of Nashville v. Mason,* 11 Tenn.App. 344 (1930). In other words, the total fair market value of the taken property is apportioned by first determining the lessee's interest, which is the fair market value of the leasehold on that property minus rent actually called for under the lease, with the remainder of the property's fair market value going to the lessor. Incidental damages to each interest are also allowed, but are not an issue in the instant case.

■ Lessee Madison has called our attention to persuasive authority which approaches apportionment in the case of a long-term lease differently from apportionment in the case of a short-term lease. These cases approach apportionment of a condemnation award for property subject to a short-term lease by valuing the lessee's interest in the leasehold first, much like the Tennessee cases cited *supra,* but apportion the award when a long-term lease is involved by first valuing the lessor's present interest in the reversion and in the future rental payments. L. Orgel, Valuation Under the Law of Eminent Domain, §§ 122, 125–26 (2d ed. 1953), and cases cited therein. It appears that the approach outlined by Orgel in long-term lease cases comports fairly closely with that used by Gibson in testifying to his opinion of apportionment values. However, we need not decide any questions about the mechanics of the "long-term" approach as applied in this case or in any other, for we conclude that we are bound by Tennessee law not to apply it. We conclude that Tennessee courts, in *all*

cases of apportionment of the proceeds of a condemnation between lessor and lessee, must apply the approach (similar to the one recommended by Orgel for use in short-term lease cases) of apportioning by valuing the leasehold first, in the manner described in Tennessee cases such as *Barden* and set forth above. It is true that the distinction in Orgel, which appears to be followed in a great number of jurisdictions, is supported by the similarity of a long-term lease to a fee simple in the lessee subject to payment of an annuity in the form of rent to the lessor. It is also true that the courts of Tennessee appear not to have been confronted with the question of whether to adopt the distinction or not. Nevertheless, the Tennessee authority that we have found consistently and as recently as 1975 states the rule of valuation of the lessee's interest as excess of value of the leasehold over rentals due for the unexpired term. See *Shelby County v. Barden, supra;* other cases cited *supra.* These cases state the rule generally as applicable in condemnation apportionment cases involving leases, and in most instances they do so without even giving any facts as to the length of the specific lease involved from which we might infer tacit approval or disapproval of a long-term/short-term distinction. Accordingly, we conclude that the lower courts are bound to apply the rule we have described the Tennessee cases as stating in cases of leases of all lengths, absent some more definite pronouncement on the question from our Supreme Court.

■ The trial court, then, applied the proper standard of apportionment, for the memorandum opinion states that the lessee's damages are "the market value of his leasehold interest less the rents that he must pay to the landlord, plus incidental damages, if any, to the remainder," and cites *City of Nashville, supra,* and *Chambers, supra.* We think, however, that the record lacks the evidence necessary for a reasonable application of that standard. Madison's only evidence was Gibson's testimony as to the value of the reversion and his remark that Madison's leasehold was worth $1.25 million. The Gees presented no

evidence on the question of valuation for apportionment purposes. There was thus no evidence sufficient to determine properly the lessee's damages, that is, the fair market value of the leasehold (or fair rental value of the property) less the rent due under the lease with reference to the specific strip of property taken. The fair market value of the leasehold in the strip taken could be established by specific evidence of the rental value of that strip reduced by the rental required to be paid, but there was not enough evidence to do so. On the issue of rent called for under the lease, there was no evidence concerning the effect of the escalator clause and whether it could be taken into account with any reasonable degree of certainty, nor could the rent attributable to the strip taken have been computed from the evidence given. Further, the trial judge in his memorandum gives strong indications of his own dissatisfaction with the state of the evidence and with his having to make an apportionment based on it, and appears to have been willing to grant a new trial on the issue had the parties requested it. Under these circumstances, and because an application of the correct apportionment method to evidence adequate for that purpose should speedily produce a proper result which will probably differ from that heretofore reached, we remand under T.C.A. § 27–329. On remand, the trial court should retry only the issue of exactly how the award is to be apportioned between the Gees and Madison, both of whom are entitled to share in it according to their interests. The court should then decide that issue by applying Tennessee law, which it correctly understands, to the adequate evidence obtained at the retrial. The costs of this appeal will be taxed equally between the Gees and Madison Investments.

Affirmed in part, modified and remanded.

SHRIVER, P. J., not participating.

TODD, J., concurs.