IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 11, 2001 Session

# CITY OF KNOXVILLE v. THE CLINCH LOCUST GARAGE CO., and PETER STAUB MEYER, HARRY F. MEYER, JR., JOHN BARRY STAUB, FRANK B. GALYON, JR., AMY W. WARREN, HOPE W. WOOD, JOHN ALBERT WALKER, CECILIA W. DAILY, and DAVID G. BROWN; BROWN, BROWN & WEST, and PAMELA J. WOLFE

**Direct Appeal from the Circuit Court for Knox County**
**No. 1-152-99 Hon. Dale C. Workman, Circuit Judge**

**FILED MARCH 8, 2002**

**No. E2001-00297-COA-R3-CV**

The Trial Court established the respective interests of owners and lessees in sums received in an Eminent Domain Case. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and WILLIAM H. INMAN, SR.J., joined.

Gregory C. Logue, Knoxville, Tennessee, for Appellant, Clinch Locust Garage Co.

Steven E. Schmidt, Knoxville, Tennessee, for Appellees, Peter Staub Meyer, Harry F. Meyer, Jr., John Barry Staub, Frank B. Galyon, Jr., Amy W. Warren, Hope W. Wood, John Albert Walker and Cecilia W. Daily.

**OPINION**

In this action the Trial Court was required to apportion a condemnation award between the lessors, lessees, and sublessees of the condemned property. The underlying facts were stipulated.

On December 10, 1921, Pauline Staub leased the subject property to A.P. Brown for a 99 year term. At the time of condemnation, the Staub heirs were the owners of the property. The lease was assigned to Clinch Locust Garage Company in December 1923 under the same terms and conditions as the original lease. Clinch Locust concurrently sublet part of the leasehold estate, and this sublease was later assigned to Pamela Wolfe, who subleased the same to Brown, Brown & West. Clinch Locust also sublet part of the leasehold estate to various other tenants. These other tenants were paying combined rent of approximately $65,000.00 per year to Clinch Locust at the time of the condemnation, but Wolfe was only paying rent of $800.00 per year to Clinch Locust. Wolfe received annual rent of $6,000.00 from Brown, Brown & West, and Brown, Brown & West received annual rent of $21,600.00 from its subtenant. Clinch Locust paid the Staub heirs an annual rent of $4,750.00 for the entire property. After condemnation, Clinch Locust and all sublessees relinquished their possession of the property. All parties agreed to a sum of $968,625.00 to be paid by the City as the total compensation due for condemnation of the property, but the Trial Court was required to allocate this award between the interested parties.

Following trial, after the Court heard evidence from various experts regarding how the award should be apportioned, it ultimately entered a Judgement apportioning the condemnation award as follows:

| | |
|---|---|
| Staub heirs | $420,880.00 plus 43.5% of accrued interest |
| Clinch Locust | $266,000.00 plus 27.5% of accrued interest |
| Wolfe | $84,745.00 plus 8.7% of accrued interest |
| Brown | $197,000.00 plus 20.3% of accrued interest |

The following issues have been raised on appeal:

1.  Whether the trial court's award of $266,000.00 to Clinch Locust was inadequate?

2.  Whether the trial court's award of $279,000.00 to Brown was inadequate?

3.  Whether the trial court erred in failing to award the owners the fair market value of all improvements on the property before the condemnation award was apportioned?

4.  Whether the trial court erred in failing to rule that the owners were entitled to receive the present value of all rental payments due under the lease and their attorneys fees from that portion of the award given to the lessee?

5.  Whether the trial court erred in failing to rule that the sublessees may only share in the lessee's portion of the condemnation award, and cannot make separate claims for compensation?

6.       Whether the trial court erred in changing its finding regarding the square foot rental rate which should have been applied to the Brown leasehold interest?

Clinch Locust and Brown argue that the Trial Court incorrectly valued their leasehold interests based upon the evidence presented and the case law on the apportionment issue. Clinch Locust and Brown rely upon the case of *State ex rel. Dept. of Transportation v. Gee*, 565 S.W.2d 498 (Tenn.Ct. App. 1977), wherein this Court held that apportionment of a condemnation award between a lessor and a lessee should be accomplished by first determining the value of the lessee's interest and awarding said amount to the lessee, and then awarding any remainder to the lessor. Further, the *Gee* case instructs the courts to value the lessee's interest by determining the fair market rental value of the leased property for the unexpired term of the lease, and then subtracting the rent that the lessee would have actually paid for the remainder of the lease. *Id*. The Trial Court expressly recognized *Gee* as the controlling authority, and adopted the valuation given by Clinch's expert, Wallace, apparently because Wallace more closely followed the analysis required by *Gee*.

The Court did, however, make some minor changes to the discount rates, vacancy rates, and square foot rental rates applied by Wallace in making his calculations, which Clinch Locust and Brown challenge. The Court's findings as to the proper rates to be applied within the calculations are factual findings, and thus come to this Court with a presumption of correctness. Tenn. R. App. P. 13(d). The Trial Court heard the evidence from the various experts, and assigned values which he felt were appropriate based upon the circumstances, such as the risk of the lessee defaulting on the lease, the proof regarding square foot rental rates in the area, etc. The Trial Court's findings as to the various rates were within the range of rates supplied by the experts, and are supported by the evidence presented. We hold the evidence does not preponderate against the Trial Court's findings on these issues.[1]

The Staub heirs argue that the Trial Court erred in failing to construe certain provisions in the lease which they allege would have given them a superior right to a portion of the condemnation proceeds. First, the owners cite paragraph "Twelfth" of the lease, which provides that "in the event of the determination of this lease, at any time before the expiration of said demised term of ninety-nine years, for the breach of any of the covenants herein contained, then in such case all buildings and improvements then situated on said premises, shall be forfeited to said Lessor". The owners argue that this paragraph gives them the right to be paid for the improvements on the condemned property before any other party is paid for its interest, because the lease is being terminated by the condemnation of the property. The owners fail to mention, however, that this paragraph expressly requires a termination based upon a breach, and there has been no breach by the lessee in these circumstances. We find this argument to be without merit.

---

[1]Clinch and Brown argue that the Trial Court's apportionment was in error because the Trial Court mentioned during his ruling from the bench that he expected the awards to be within a certain numerical range when the calculations were performed. This issue is without merit, as the Trial Court entered a Judgment incorporating the calculated values.

Next, owners argue the Trial Court erred in failing to find that the owners were entitled to receive the present value of all rental payments due under the lease as well as their attorneys' fees on the front end, before apportioning the remainder of the condemnation award. The owners rely upon paragraph "Fifteenth" of the lease, which states that "in case the Lessor, or her successors in interest, shall without any fault on their part, be made parties to any litigation commenced by or against the Lessee or his assigns or successors in interest, then the lessee or such assignee, shall pay all costs and attorney's fee incurred by or against the Lessor, or her successors in interest, by or in connection with such litigation . . . and that all such costs and attorney's fees if paid by lessor, and the rent reserved in this lease . . . shall be and they are hereby declared to be a first lien upon all buildings and improvements placed upon the said demised premises, at any time during the term of this lease, and upon the leasehold estate created".

The Trial Court considered this argument, and found the provision in the lease was not intended to address the circumstances of this case. The law is clear that "the intention of the parties as ascertained from the language of the instrument controls" when construing a written lease. *First Am. Nat. Bank v. Chicken System of America, Inc.*, 510 S.W.2d 906, 908 (Tenn. 1974). In this case, the lease does not speak to what would happen in the event the property was condemned. The provision of the lease quoted provides that if the owners "shall without any fault on their part, be made parties to any litigation commenced by or against the Lessee or his assigns or successors in interest", then the lessee shall pay the owner's attorneys' fees. Of course, in this case, the litigation was commenced against the owners and the lessees simultaneously, and was not due to the fault of any party. The owners were not "made parties" to litigation which had already been commenced by or against the lessee. Accordingly, we affirm the Trial Court's ruling on this issue.

Next the owners also argue that the sublessees' interests should not have been valued separately, but that the lessee should have received an apportionment based upon the leasehold value and then divided that portion with its sublessees. The owners cite no authority for this contention.

A leasehold interest is compensable in a condemnation of property. *See Gallatin Housing Authority v. Chambers*, 362 S.W.2d 270 (Tenn. Ct. App. 1962). In that case, this Court quoted with approval from Nichols on Eminent Domain, stating:

> In all cases where property taken for the public use is in multiple ownership, whether such ownership is qualitatively, quantitatively or otherwise considered, each of the owners of an undivided moiety, or an interest in or lien upon the property, has a corresponding right to share in the award.

> * * *

> The apportionment of an award in condemnation for premises subject to a lease is generally dependent upon the extent to which the condemnation impugns the relative rights and obligations of the lessor and lessee.

-4-

*Id*. at 274.[2]

We find no authority which prohibits a sublessee from receiving the value of its leasehold interest in a condemnation proceeding. In an opinion of this Court, a sublessee was allowed to have its leasehold interest valued so that it could be compensated for same where the property was acquired by the Metropolitan Development and Housing Authority under the threat of condemnation. *See Stinson v. 138 Fifth Ave. South, Inc.*, 1998 Tenn. App. LEXIS 27 (Tenn. Ct. App. Jan. 14, 1998). The experts' testimonies credited by the Trial Court, agreed that the leasehold interest had to be valued considering all of the leases and subleases involved. The evidence showed that the sublessees were receiving income from this property just as the original lessee was. Thus, it was appropriate for the Trial Court to value the sublessees' interests and consider it in apportioning the condemnation award.

The owners argue that this result is unfair in that it adversely affects the value of the owners' interest in the property solely by reason of transactions made by its lessee, over which the owners had no control. However, the owners' predecessor in interest could have restricted the lessee's right to sublease the property, but she did not. It was appropriate in apportioning the award to consider the value of each leasehold interest and award an appropriate portion of the total award based upon that value, which is what the Trial Court did.

The owners also argue that the Trial Court's ultimate finding regarding the square foot rental rate to be applied to the Brown leasehold was in error. This factual finding comes to this Court with a presumption of correctness. Tenn. R. App. P. 13(d). The Trial Court's finding was within the range of evidence submitted, and the evidence does not preponderate against this determination. Accordingly, we affirm the Trial Court's Judgment and remand with the cost assessed one-half to the Clinch Locust Garage Co., and one-half jointly to Peter Staub Meyer, Harry F. Meyer, Jr., John Barry Staub, Frank B. Galyon, Jr., Amy W. Warren, Hope W. Wood, John Albert Walker, and Cecilia W. Daily.

_____
HERSCHEL PICKENS FRANKS, J.

---

[2]In this case, the property was condemned in totality and all parties gave up the right to possession and use of the property.