**NASHVILLE HOUSING AUTHORITY, Petitioner,**

v.

**Freda COHEN, Respondent.**

Supreme Court of Tennessee.

Oct. 12, 1976.

Joseph L. Lackey, Jr., Lackey, Alexander & Jackson, Nashville, for petitioner.

J. Granville Clark, Russellville, Ky., Harold Seligman, Nashville, for respondent.

## OPINION

BROCK, Justice.

### I

This is a condemnation case. The question presented is whether or not the trial judge erred in refusing to charge the jury that, in determining the fair market value of the property, they should consider the effect, if any, of potential rezoning of the property; provided, they should first find that rezoning was a "reasonable probability."

The trial judge refused a request for special instruction to this effect submitted by

the condemnee-respondent, Freda Cohen. The Court of Appeals, in an opinion by Drowota, J., held unanimously that failure to so instruct the jury upon the effect of potential rezoning constituted reversible error, and remanded the case for a new trial. The petitioner, Nashville Housing Authority, has filed a petition for certiorari on this single issue. Primarily because of an apparent conflict between different sections of the Court of Appeals, we granted certiorari review.

The petitioner, Nashville Housing Authority, filed a condemnation petition against respondent's residential property located at 110 31st Avenue, South in Nashville. A jury of view awarded respondent $30,350.00. Petitioner appealed to a petit jury trial in the Circuit Court which resulted in an award of $27,500.00. As noted, the Court of Appeals reversed for the reason above stated.

A large portion of the three day trial was devoted to testimony regarding the prospect that the property might be rezoned from its present "Residential A" status, to a classification that would allow its use for multi-family dwellings or offices. The theory argued by the respondent was that commercially zoned property virtually surrounded the condemned property, that commercial zoning would greatly enhance the fair market value of the property, and that there was a reasonable probability that the zoning for the parcel would actually be changed to "commercial." In summarizing the evidence to this effect, the Court of Appeals noted:

"In the instant case, the evidence adduced by appellant showed that the property was located two lots south of West End Avenue facing on 31st Avenue; that property facing West End Avenue is zoned commercial and property behind West End Avenue to the north had been zoned commercial for a full block; that immediately across the street from the property in question, on the other side of 31st Avenue, the property had been rezoned Residential C–1 (allowing multi-family dwellings); that the subject property had originally been included in the zoning change request that resulted in that rezoning but was taken out when the proponents of the change were told by authorities ·that the subject property was to be taken for the street widening; that the subject property would lie in an area between a new branch of First American National Bank on the north and· an 800 car Vanderbilt University parking lot to the south, as well as the multi-family dwellings across 31st to the west; and that the Proposed Land Use Plan of the Nashville Housing Authority called for the area zoned at the time of the taking as Residential A, in which the subject property was located, to be rezoned to allow for multi-family dwellings."

On the basis of this evidence, the respondent requested the following special instruction, which was declined:

"The Court instructs the jury that in arriving at the value of the real estate, the jury may consider the possible change of zoning and the reasonable influence on the market value of such possibility if the jury believe that there is a reasonable probability for such zoning change or changes."

The petitioner does not challenge the correctness of this proposition of law. It has contended, instead, that the error does not warrant reversal because so much evidence was admitted to show the likelihood and probable effect of a zoning change that the jury must have considered, and rejected, the respondent's theory that the market value of the property was enhanced by the possibility that it could be put to a more profitable use than that permitted by present zoning.

The judge did charge the jury as follows: ". . . Generally speaking it is proper to consider all of the varied elements of value, that is, all of the facts which the owner would properly and naturally press upon the attention of the buyer with whom he is negotiating the sale. And all of the facts which would naturally influence a person of ordinary prudence desir-

ing to purchase. In this estimation the owner is entitled to have consideration be given to all the capabilities of the property, to the business or uses if any to which it has been devoted and to any and every use to which it may reasonably be adapted or applied. And this rule includes the adaptation and value of the property for any legitimate or lawful purpose or business even though it has never been so used, and even though the owner has no present intention to devote it to such use. "However it is the present market value which must be ascertained and not what the property may be worth at sometime in the future unless and only to such an extent as the possibility of such future value has an effect upon its present value." (Underscoring added.)

This charge, standing alone, could be construed as embracing the matter contained in the requested special instruction. However, during the course of the trial, the jury was admonished not to consider the possibility of rezoning:

"What you are interested in is what this property was worth . . . on May 11, 1973. What they did in 1973 [when nearby land was in fact rezoned] doesn't have anything to do with this lawsuit."

The jurors could not have considered the evidence of possible rezoning without disregarding the Court's unmistakable statement that it was irrelevant.

Furthermore, since the controlling ordinance restricted the use of the subject property to single-family dwellings, use of the property for multi-family dwellings or offices would not be "legitimate or lawful." Therefore, the "any legitimate or lawful purpose or business" limitation of the instruction given to the jury by the trial judge necessarily precluded the jury's consideration of use of the land for multi-family dwellings or office space in determining the fair cash market value of the owner's property.

II

■ The Tennessee Constitution requires "[t]hat no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." Tenn.Const. Art. 1, § 21. The "just compensation" constitutionally required is the fair cash market value on the date of taking of the property for public use. *Alloway v. Nashville*, 88 Tenn. 510, 13 S.W. 123 (1889). The fair market value of the land is the price that a reasonable buyer would give if he were willing to, but did not have to, purchase and that a willing seller would take if he were willing to, but did not have to, sell. *Davidson County Board of Education v. First American National Bank*, 202 Tenn. 9, 301 S.W.2d 905 (1957); *Woodfolk v. Railroad*, 32 Tenn. 421 (1852). In determining what constitutes fair market value, the rule in Tennessee has long been stated to be that the jury must consider all capabilities of the property and all the legitimate uses for which it is available and reasonably adapted. *Davidson County Bd. of Education v. First American Nat'l Bank, supra*; *McKinney v. Nashville*, 102 Tenn. 131, 52 S.W. 781 (1899); *Alloway v. Nashville, supra*.

■ Although the question has not previously been considered by this Court, it is generally recognized that a use which is presently illegal may be considered, along with all presently available uses, in determining the value of property, if the restrictive law is *malum prohibitum* rather than *malum in se*, and, if there is a reasonable probability that the presently illegal use will be made legal in the future. 4 Nichols, *The Law of Eminent Domain*, §§ 12.3143[2], 12.322 (3d ed. 1975). See also 1 Orgel, *Valuation Under Eminent Domain*, § 34 (2d ed. 1953). When these conditions are met, it seems clear that, in determining value in condemnation proceedings, a use of land which is prohibited by existing zoning regulations may be considered. The rule has been well stated by Nichols in *The Law of Eminent Domain*:

"Where the enactment of the zoning restriction is not predicated upon the inher-

ent evil of the proscribed use—in other words, where the forbidden use is *malum prohibitum* rather than *malum in se* —and there is a possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value." 4 Nichols, *The Law of Eminent Domain*, § 12.322[1] (3d ed. 1975).

Apparently, the earliest case concerning the effect upon the issue of value in eminent domain proceedings of possible alteration of zoning regulations is the Ontario case of *In Re Gibson*, 28 Ont.L.R. 20, 11 D.L.R. 529 (1913). The court held that evidence of the probability of a change in the zoning regulation could be introduced as well as evidence of the higher value which the property would enjoy once the restriction were removed. The first such holding in this country was by the California court in *City of Beverly Hills v. Anger*, 110 Cal. App. 626, 294 P. 476 (1930). In subsequent years this rule or a variation of it has apparently been adopted by all American jurisdictions that have considered the question. See, e. g., *Union Elec. Co. v. Saale*, 377 S.W.2d 427 (Mo.1964); *State Roads Comm'n v. Warriner*, 211 Md. 480, 128 A.2d 248 (1957); *People v. Dunn*, 46 Cal.2d 639, 297 P.2d 964 (1956); *Hall v. City of Des Moines*, 245 Iowa 458, 62 N.W.2d 734 (1954); *City of Austin v. Cannizzo*, 153 Tex. 324, 267 S.W.2d 808 (1954).

Most of these decisions have given emphasis to the requirement that the prospective change in zoning be "reasonably probable" within "the near future," or, probable within a "reasonable time." An example of this emphasis is found in *City of Austin v. Cannizzo, supra* at 815, wherein the court stated the following test for admissibility of evidence of a prospective change in zoning:

"If the trial judge is satisfied from the evidence as a whole that there is no reasonable probability that restrictions may be lifted within a reasonable time, he should exclude evidence of value based on use for any purposes other than those to which it is restricted. On the other hand, if it appears reasonably probable to the trial judge that the wants and needs of the particular community may result, within a reasonable time, in the lifting of restrictions, he should admit testimony of present value based on prospective use of the property for purposes not then available."

It has been held, however, even where the prospect of change is remote, that if the likelihood is sufficient to have an appreciably enhancing effect upon present market value, it may be considered. Thus, in *Moschetti v. City of Tucson*, 9 Ariz.App. 108, 449 P.2d 945, the court reasoned:

"The term 'in the near future' or even the term 'in a reasonable time' bear no direct relationship to the ultimate subject under inquiry, i. e., the market value of the condemnee's land to the hypothetical willing buyer. To a literary-minded judge, the term 'near future' might exclude a rezoning that is unlikely for a two or three year period. To an astute investor, however, ten, fifteen, or twenty years might be considered 'in the near future,' or a 'reasonable time,' from the standpoint of investment objectives.

\* \* \* \* \* \*

"The far better rule, in our view, emphasizes the clause in the Nichols rule which states that '. . . such likelihood may be considered if the prospect of such [zoning change] . . . is sufficiently likely as to have an appreciable influence upon the market value.' "

This view has found support in *Wolff v. Commonwealth of Puerto Rico*, 341 F.2d 945, 946 (1st Cir. 1965), wherein the court said:

"While some of the cases cited *infra* speak only in terms of probability, we think that any possibility sufficiently substantial to affect market value must be regarded."

The difference between the "reasonable probability" standard and the "any possibility sufficiently substantial to affect

market value" standard urged in the *Moschetti* and *Wolff* cases should not, in our opinion, be exaggerated. They are but different expressions of the requirement that evidence must be relevant and material to be admissible. It is the effect, if any, upon the fair market value on the date of taking which makes relevant the evidence of a possible rezoning of the property. A prospect of rezoning, no matter how imminent, is irrelevant if it has no effect upon such fair market value; and, on the other hand, a prospect of rezoning which may appear to be somewhat remote should, nevertheless, be considered by the court if it affects the fair market value of the property on the date of taking. See *Moschetti v. City of Tucson, supra,* at 950. It is this standard of relevance and materiality which the trial judge should employ in exercising his discretion to admit or exclude evidence offered to show a possible zoning change.

When such evidence has been admitted, the jury should be cautioned that they must not evaluate the property as though the possible rezoning were already an accomplished fact, but, that in considering value they may take into account the effect, if any, which the possibility of rezoning has already had upon the fair market value of the property on the date of taking. See *Morrison v. McMinn,* 88 Ariz. 261, 355 P.2d 900 (1960); 4 Nichols, § 12.322(1). We conclude that the evidence in this case warranted a jury instruction substantially as we have stated and, that the instructions given, considered *in toto*, did not include such a charge.

The judgment of the Court of Appeals reversing the judgment of the trial court and remanding for a new trial is affirmed. Costs in this Court are taxed against the petitioner.

COOPER, C. J., and FONES, HENRY, and HARBISON, JJ., concur.