CITY OF JOHNSON CITY, Tennessee,
Plaintiff–Appellant,

v.

OUTDOOR WEST, INC. of Tennessee,
Defendant–Appellee.

Court of Appeals of Tennessee,
Eastern Section.

Dec. 16, 1996.

Permission to Appeal Denied by
Supreme Court May 19, 1997.

James D. Culp, Staff Attorney, Johnson City, for Appellant.

Thomas C. Jessee, Jessee & Jessee, Johnson City, for Appellee.

## OPINION

SUSANO, Judge.

In this condemnation case, the City of Johnson City acquired by eminent domain a small strip of land for the purpose of widening and realigning a city street. The condemned land was subject to a leasehold interest [1] held by the defendant, Outdoor West, Inc. of Tennessee (Outdoor West). The lease granted Outdoor West space for a billboard, which it rented to various advertisers. The City's authority to take the land is not in question; the only issue before us is the amount of compensation to which Outdoor West is entitled for the taking of its leasehold interest. Following the close of proof, the trial judge instructed the jury that it had to arrive at a value in the range of $59,500 to $80,920. The jury determined that the value of the leasehold interest was $72,000 and returned a verdict accordingly. The City appealed, contending that the trial judge committed prejudicial error in his instructions to the jury. Specifically, the City raises two issues [2], which in substance present the following questions:

1. Did the trial court err in allowing the jury to base its value of the leasehold in part upon an expectation of a renewal of the lease?

---

1. The owner of the underlying fee settled separately with the City and is not a party to this case.

2. The City appears to raise a third issue in its brief, suggesting that the trial court erred in preventing it from *arguing to the jury* that the presence of the cancellation provision diminished the value of the leasehold. However, this issue is not specifically discussed in the argument section of the City's brief, and given our disposition of this case, we deem it unnecessary to address it in detail in this opinion. Suffice it to say that the presence of the cancellation provision was a relevant matter for the jury's consideration.

2. Did the trial court effectively prevent the jury from considering the lease's cancellation clause?

I

At the time of the taking, Outdoor West had maintained a billboard on the subject property for sixteen years. The current lease, which was at least the third between Outdoor West and the property owner, had seven years and eight months remaining on its ten-year term. Although the lease did not contain a renewal provision, it was the custom of Outdoor West to renew its leases, and it was the company's intention to renew the subject lease. The lease provides that either party can cancel the relationship by giving six months' written notice to the other.

Three witnesses testified at trial regarding the value of Outdoor West's leasehold. Each based his calculations of value on the net income received by Outdoor West from the rental of the billboard. The first, Ed Justice, who was the property manager at Outdoor West, calculated the present value to be $59,-323.20. The second witness, Bill Miller, arrived at a value of $59,500. On cross-examination, Mr. Miller testified that the leasehold would be worth only about $4,600 if it was canceled with six months' notice. Both Mr. Miller and Mr. Justice based their calculations on the remaining lease term of seven years and eight months.

The third witness, David Rikard, concluded that the leasehold was worth $80,918.13 [3]. Despite the City's objection, Mr. Rikard was allowed to predicate his opinion of value on the remainder of the current lease term, plus an additional ten-year period. Mr. Rikard acknowledged that the lease contained no renewal provision, but stated that it was reasonable to assume that the lease would be renewed at least one more time.

During closing argument, counsel for the City suggested that the jury had three figures to consider in arriving at a value: $4,600, if the lease was canceled with six months' notice; $59,500, if the lease ran for the remaining term; and $80,918, if the lease ran for the current term and an additional ten-year term. At that point, the trial judge interrupted, and, in a side bar discussion, stated that the City could not argue that the jury could consider three different values for the leasehold. He stated that Mr. Miller's opinion as to the fair market value of the leasehold was $59,500, and not $4,600, and that he would therefore instruct the jury that the value was between $59,500 and $80,918.

The trial judge subsequently instructed the jury as follows:

> You must determine the fair cash market value of the leasehold interest only from the opinions of the witnesses who have testified. You may not find the market value of the property to be less than or more than that testified by any witness. In other words, your verdict must be in the range between the lowest and highest testimony, and the lowest testimony was that of Mr. Miller at $59,500.00 He rounded his up from $59,300 and some dollars; and the high testimony was $80,000 ... and I know it was $918 and some cents, but I think he rounded it up to $80,920. But those were the high and low testimonies in this case.

The City had submitted a request for a special jury instruction regarding the cancellation provision. The trial judge gave the requested instruction in substance, and also discussed the possibility of the lease's renewal:

> Paragraph 2 of the lease provided that either party could cancel the lease upon giving the other party six months notice in writing. The testimony was that this lease had been renewed twice, possibly more. Outdoor West takes the position the lease likely would have been renewed for at least another term after 2001, the ten year term that ran from 1991 to 2001. Even if it were renewed in 2001, the terms and condition[s] of the lease might be or might not be the same as this lease. Of course it might not have been renewed in 2001, and we know it could have been canceled at

---

**3.** Mr. Rikard originally testified that the value was $84,200.00. He later modified that to $80,-918.13, after counsel for the City suggested that the monthly income figure he had used was slightly higher than the figure reflected by Outdoor West's records.

any time, even within the present term of the lease, upon the giving of six months notice in writing. You must take into consideration in fixing the fair cash market value of this leasehold interest as of October 29, 1993, all these factors, and any other factors you deem pertinent to arrive to [sic] at what a willing buyer would pay for this leasehold and what a willing seller would have accepted, considering all those factors.

The trial judge made no further mention of the cancellation provision or how it might be factored, if at all, into the calculation of the lease's value.

The jury returned a verdict of $72,000. After its motion for a new trial or remittitur was denied, the City appealed.

### II

■ We review the jury charge in its entirety to determine whether the trial judge committed reversible error. *Otis v. Cambridge Mut. Fire Ins. Co.,* 850 S.W.2d 439, 446 (Tenn.1992); *In re Estate of Elam,* 738 S.W.2d 169, 174 (Tenn.1987); and *Grissom v. Metropolitan Gov't of Nashville,* 817 S.W.2d 679, 685 (Tenn.App.1991). Jury instructions are not measured against the standard of perfection. *Grissom,* 817 S.W.2d at 685. The charge will not be invalidated if it "fairly defines the legal issues involved in the case and does not mislead the jury." *Otis,* 850 S.W.2d at 446; *Grissom,* 817 S.W.2d at 685. Furthermore, a particular instruction must be considered in the context of the entire charge. *Elam,* 738 S.W.2d at 174.

■ Before addressing the propriety of the jury instructions, we note that a leasehold interest is compensable when the underlying property is taken by eminent domain. *Shelby County v. Barden,* 527 S.W.2d 124, 129 (Tenn.1975); *Lamar Advertising of Tennessee v. Metropolitan Dev. and Hous. Auth.,* 803 S.W.2d 686, 688 (Tenn.App.1990); and *Gallatin Hous. Auth. v. Chambers,* 50 Tenn.App. 441, 362 S.W.2d 270, 274 (1962). The basic rule of valuation of a leasehold interest is well-settled:

[t]he lessee or tenant is entitled to any excess in value of his unexpired leasehold over and above the rentals which would be due for the unexpired term.

*Barden,* 527 S.W.2d at 129; *see also State ex rel. Comm'r v. Teasley,* 913 S.W.2d 175, 179 (Tenn.App.1995); *State ex rel. Dept. Of Transp., etc. v. Gee,* 565 S.W.2d 498, 502 (Tenn.App.1977), and *Chambers,* 362 S.W.2d at 274.

■ Trial courts have broad discretion over the admission of evidence concerning the value of condemned property. *Smith County v. Eatherly,* 820 S.W.2d 366, 369 (Tenn.App.1991). Of course, to be admissible, such evidence must first be relevant under the Tennessee Rules of Evidence. "Relevant evidence" is defined as

evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Tenn.R.Evid. 401. In the absence of a contrary statutory provision, relevant evidence is generally admissible, Tenn.R.Evid. 402, unless

its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Tenn.R.Evid. 403.

Therefore, in order to assess the propriety of the jury instructions, we must first determine whether evidence of the expectancy of the lease's renewal and the existence of the cancellation provision is relevant to a determination of the leasehold's value.

### III

■ We have concluded that evidence of both the probability of the lease's renewal and the cancellation provision is relevant under Tennessee Rules of Evidence 401 and 403. Each contingency arguably affects the value of the leasehold interest. The jury is generally entitled to consider any factor that might tend to enhance or reduce the leasehold's value, thereby making a particular value more probable or less probable than without that evidence. Tenn.R.Evid. 401. *See*

also *State v. Brandon*, 898 S.W.2d 224, 227 (Tenn.App.1994) (holding that evidence of soil and water contamination is relevant, since it makes a lower market value of condemned land more likely than without such evidence). The leasehold's value would naturally be increased by the probability of another ten-year term, and decreased by the specter of a cancellation with only six months' notice. The likelihood of either of these events, as well as the weight to be allocated each in calculating the amount of compensation due Outdoor West, are matters for the jury to resolve.

In other eminent domain cases, the weight to be given various contingencies that may affect the value of condemned property has been held to fall within the province of the jury. For example, the likelihood of rezoning or removal of restrictions, and its effect on value, are questions of fact left to the jury's determination. *State ex rel. Comm'r, D.O.T. v. Cox*, 840 S.W.2d 357, 362 (Tenn. App.1991); *State ex rel. Comm'r, D.O.T. v. Williams*, 828 S.W.2d 397, 400–01 (Tenn.App. 1991); and *Shelby County v. Mid–South Title Co.*, 615 S.W.2d 677, 680 (Tenn.App.1980). The contingency of the lease's renewal or cancellation in the instant case was no more remote or speculative than was the possibility of rezoning or change in property restrictions in the cases cited above.

■ When an expert testifies as to his opinion of the value of condemned property, the jury is entitled to consider the credibility of that witness' testimony in light of all relevant evidence. *Chambers v. Bradley County*, 53 Tenn.App. 455, 384 S.W.2d 43, 45 (1964) ("The general rule that the weight to be given expert or opinion evidence is for the jury is too familiar to justify extended citation of· cases."). As our court has stated,

> [t]he jury is not required to accept or reject in toto the theory of either party, but may arrive at its own concept of truth and justice from the evidence.

*State ex rel. Shaw v. Shofner*, 573 S.W.2d 169, 174 (Tenn.App.1978).

■ We find that the trial judge did not err in allowing the jury to consider the expectation of a renewal of the lease. Given the fact that this lease had been renewed at least twice before, it was not unreasonable to predict that it would be renewed for an additional ten-year term. This is not to say that it necessarily *would* have been renewed; nevertheless, the probability of a renewal, as incorporated into one witness' opinion of the leasehold's value, could properly be considered by the jury along with the other relevant evidence on value.

By the same token, the jury was entitled to consider the fact that the lease was subject to cancellation by either party upon six months' notice. Obviously, if the lease was to be canceled, Outdoor West would only have the benefit of an additional six months' income, rather than that of the full remaining term. As indicated earlier, Mr. Miller testified that the value of the leasehold would diminish to about $4,600 if the lease was canceled.

The City contends that the trial judge prevented the jury from any meaningful consideration of the cancellation provision, and of the leasehold's potential value in the event of a cancellation, by instructing the jury that it had to reach a verdict between $59,500 and $80,920. We agree. The jury was restricted to a range of figures, which, in effect, did not permit the jury to consider the cancellation clause. Therefore, even though the trial judge instructed the jury that it could consider the cancellation provision, he effectively precluded it from doing so. In other words, the problem with the trial judge's charge was not that he instructed the jury to base its verdict on the values suggested by the evidence, but rather that he forced the jury to ignore a potential value suggested by one of the witnesses, by confining the verdict to the range mentioned in his charge.

■ The record offers little indication as to whether the power of cancellation would or would not have been exercised. However, the possibility of a lease's cancellation, where the lease specifically contains such a provision, is certainly a factor to be considered by the trier of fact in arriving at the value of a leasehold interest. We therefore find that the trial court erred in its instructions to the jury regarding the effect of the cancellation provision and the specific

range of values into which its verdict could fall. Given the fact that the jury's verdict fell squarely within the parameters imposed by the trial judge, we cannot find this error to be harmless. Rule 36(b), T.R.A.P. On the contrary, we find that the instructions "more probably than not affected" the jury's verdict by restricting it to a range much more narrow than that which it could have divined from the evidence. *See Otis v. Cambridge Mut. Fire Ins. Co.,* 850 S.W.2d 439, 446 (Tenn.1992); *Grissom v. Metropolitan Gov't. of Nashville,* 817 S.W.2d 679, 685 (Tenn.App.1991).

For the foregoing reasons, we find that a new trial is warranted. The judgment of the trial court is vacated. Costs on appeal are assessed against the appellees. This case is remanded to the trial court for a new trial, consistent with this opinion.

FRANKS, J., and INMAN, Senior Judge, concur.

## OPINION ON PETITION TO REHEAR

The appellee has filed a petition for rehearing. In the petition, the appellee contends that our opinion "failed to properly consider the evidence and the specifics of the trial judge's ruling" concerning the testimony of William Miller, one of the experts who testified on market value. While conceding in its petition that Miller testified that "if canceled the lease would be worth $4,600", the appellee points out, and we agree, that Miller did not adopt $4,600 as his opinion of value; however, we disagree with appellee's opinion regarding the significance of this latter fact. The appellee concludes, as did the trial judge, that the jury was properly instructed that it could not return a verdict for less than $59,500, the value that *was* adopted by Miller as his opinion of value, and the lowest opinion of value adopted by either of the expert witnesses. Appellee contends that we were wrong when we held that the trial judge committed reversible error when he placed a lower limit of $59,500 on the jury's verdict. We respectfully disagree.

The appellee's position incorrectly assumes that a jury is limited to the range of values *expressly adopted* by the witnesses as their opinions of value. This is too restrictive. More correctly stated, *a jury is limit-*ed to the range of market values established by the competent proof,* including the impact of all relevant factors—those tending to have a downward effect on value as well as those tending to enhance value, as of the date of taking. In this case, the downward factors included the owner's right to cancel. The evidence is clear that the value of the leasehold, assuming an exercise of the right to cancel, was $4,600 as of the date of taking. The evidence established this as a possible value, regardless of whether an expert actually adopted it as his opinion of value.

A jury is entitled to consider all relevant evidence, i.e., any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Tenn.R.Evid. Among other things, the jury in this case could consider the following value-impacting facts and inferences: (1) that the owner of the fee had the right to cancel the lease on six months' notice; (2) that the owner had not previously shown an inclination to do so, as evidenced by the fact that the lease had been renewed twice; (3) that it was reasonable to assume that the owner would not exercise his right of cancellation since the arrangement was apparently profitable to him, and the property's potential uses were limited by its size; and (4) that the lease had been renewed twice, a fact supporting the expert David Rikard's higher opinion of value, which was based on the remaining term plus a projected ten-year renewal. All of the testimony with respect to these facts was relevant on the question of fair market value. The jury could consider the effect, if any, that each of these factors "[had] already had upon the fair market value of the property on the date of taking." *Nashville Housing Auth. v. Cohen,* 541 S.W.2d 947, 952 (Tenn.1976).

If a jury can *consider* evidence, it must be permitted to *act* on that evidence, if it so desires. In this case, the jury was permitted by the trial court's charge to fully *consider* and *act upon* all of the relevant evidence *except* the owner's right to cancel the lease. When the trial judge placed a "floor" of $59,500 on the value the jury could consider, he in effect told the jury that it could not consider, on the low side, any fac-

tor that was contrary to or inconsistent with the factual basis of Miller's opinion of $59,-500. That opinion was the monetary result of Miller's mathematical calculation of present value, i.e., the "stream" of net advertising revenues due for *the remaining term of the lease at the time of taking,* reduced to present value by applying an appropriate discount rate. Needless to say, a cancellation of the lease is inconsistent with an income "stream" for the remaining term. Hence, while the jury was told by the trial judge that it could *consider* the owner's right to cancel, it is clear that *it could not act upon that instruction* because the trial judge told the jury, in effect, that it could not factor the right to cancel into its calculation of value if to do so would reduce its award below $59,-500. This was error and one that was clearly prejudicial in nature. Again, we would emphasize, if a jury can legitimately consider evidence, it must be permitted to factor that evidence into its verdict, if that is what it chooses to do.

The error in this case was in the trial court's suggestion to the jury of specific amounts as a range. The suggestion on the low side was clearly prejudicial, because there was proof of a lower value—$4,600—in the event of cancellation. It was for the jury to decide whether and to what extent the right to cancel affected the lease's value at the time of taking. The pattern instruction, with no mention of specific values, is the appropriate instruction on the subject at hand. *See* T.P.I. Civil 11.30.

We have considered the cases [1] cited in the petition for rehearing. We find nothing in those authorities at odds with our holding in this case.

The petition for rehearing is DENIED at the appellee's costs.

IT IS SO ORDERED.

FRANKS, J., and INMAN, Senior Judge, concur.

---

[1] *Nashville Housing Auth. v. Cohen,* 541 S.W.2d 947 (Tenn.1976); *State of Tennessee v. Parkes,* 557 S.W.2d 504 (Tenn.App.1977).