IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 7, 2000 Session

# RANDALL E. JORDAN v. CSX TRANSPORTATION, INC.

**An Appeal from the Circuit Court for Davidson County**
**No. 95C-3216     Hamilton Gayden, Judge**

---

**No. M1999-01415-COA-R3-CV - Filed April 17, 2001**

---

This is a suit by an employee against his employer, a railroad operator, under the Federal Employers' Liability Act. The employee alleged that he suffered injuries caused by chemical solvents used by the employer. Prior to trial, the employer made an offer of judgment under Rule 68 of the Tennessee Rules of Civil Procedure. This offer was refused. After the trial, the jury found that the employee failed to prove that his injuries were caused by the chemical solvents. The employer moved for an award of costs not included in the court clerk's bill of costs, under Rules 68 and 54.04 of the Tennessee Rules of Civil Procedure. The employee moved for a new trial. The trial court denied both parties' motions, and both parties appealed. We affirm the trial court's denial of both parties' motions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Wayne L Robbins, Jr., Gareth S. Aden, Nashville, Tennessee, for the appellant, CSX Transportation, Inc.

Cyrus L. Booker, Charlnette Richard, Nashville, Tennessee, for the appellee, Randall E. Jordan.

## OPINION

On September 29, 1995, Plaintiff/Appellee Randall Jordan ("Jordan") filed a lawsuit against Defendant/Appellant CSX Transportation, Inc. ("CSX"), a railroad operator, pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* ("FELA"). Jordan's lawsuit was similar to several other suits filed against CSX by employees and former employees, alleging serious injuries due to chronic exposure to four particular organic solvents at CSX mechanical stops in Nashville,

Tennessee.[1]   The solvents at issue in the cases were trichloroethane ("TCE"or "TCA"), trichloroethylene, perchloroethylene, and mineral spirits.  In Jordan's complaint, he alleged that, while employed by CSX, he had been exposed to several toxic chemicals, including chlorinated hydrocarbons, mixed chemical solvents, and other neurotoxic chemicals, and that the exposure had caused permanent brain damage.  He asserted that he now has an increased risk of developing cancer as a result of his exposure to the chemicals, many of which are known carcinogens.  Jordan contended that CSX negligently handled and used highly toxic chemicals in the workplace, that CSX negligently failed to warn its employees of the hazardous nature of the chemicals, that CSX negligently failed to provide its employees with adequate protective equipment, that CSX negligently failed to train its employees in the proper use of the chemicals, that CSX failed to adequately monitor its employees to determine whether they were suffering the effects of exposure to the chemicals, and that CSX negligently monitored the toxic limits to which its employees were exposed.

On September 29, 1995, Jordan served his first interrogatories on CSX.  In Interrogatory Number 5, Jordan asked CSX to give the name of any person whom it expected to call as an expert witness at trial, the qualifications of the expert witness, the subject matter of the facts and opinions to which the expert was expected to testify, and a summary of the grounds for each of the expert's opinions.  On November 23, 1998, CSX sent a letter to Jordan naming two experts whom it intended to call at trial, Dr. Barry Gordon ("Dr. Gordon"), a behavioral neurologist, and Dr. Neil Rosenberg ("Dr. Rosenberg"), a neurologist.  Along with the letter, CSX transmitted copies of reports from Dr. Gordon and Dr. Rosenberg in which the doctors discussed their findings concerning Jordan.  The letter stated:

> In addition to the findings in these reports, I anticipate that both experts will testify in general about their knowledge of solvents' effect on brain functions; levels necessary for neurotoxicity; exposures necessary for neurotoxicity; alternate causes of loss of memory, loss of concentration, and other claims made by your client; and general safety concerns.

The seven-page report from Dr. Gordon indicated that he had conducted an examination and interview with Jordan on November 10, 1998.  The report stated that Jordan complained of several physical ailments, including headaches, difficulty with concentration and memory, balance problems, sensation problems in his left hand, sleep difficulties, anxiety, depression, and mood swings.  Dr. Gordon said that the report "should be considered an outline" and that he had "not intended to duplicate every material fact."  Dr. Gordon concluded that "to a reasonable degree of medical probability, Mr. Jordan's current neurologic and neuropsychologic symptoms, signs, and/or examination results cannot be attributed to organic effects of the alleged possible exposure to trichloroethane or other solvents. . . ."  The nine-page report from Dr. Rosenberg included a list of

---

[1] Jordan's suit was consolidated with other similar employee suits against CSX by agreed order on March 14, 1996.  The consolidated cases were previously heard by the Tennessee Supreme Court for purposes of determining the admissibility of the plaintiffs' scientific evidence.  *See **McDaniel v. CSX Transp., Inc.***, 955 S.W.2d 257 (Tenn. 1997).

complaints of physical ailments similar to those given in Dr. Gordon's report. Dr. Rosenberg's assessment of Jordan stated, "This patient relates difficulties with memory and concentration as well as numerous other symptoms, none of which were substantiated by other objective findings on neurological examination."

On approximately February 11, 1999, CSX served Jordan with an Offer of Judgment in which it offered to allow judgment to be taken against it for $20,000.00 plus court costs accrued to the time of the offer. Jordan did not accept the offer.

On February 26, 1999, CSX's attorney sent Jordan's attorneys a letter concerning their failure to depose Dr. Gordon and Dr. Rosenberg. The letter stated:

> In November of 1998, when I provided the IME reports from Dr. Gordon and Dr. Rosenberg to you, I stated in the cover letter a number of subject matters upon which each of these experts is expected to testify. Despite my repeated suggestions and inquiries, you have never indicated any willingness or desire to take the deposition of either of these expert witnesses, nor have you sought supplementation of their reports.
>
> I want to make sure that you understand that both of these experts are going to testify that Mr. Jordan's exposure levels are insufficient to cause toxic encephalopathy. They are both going to testify about the state of literature on the subject, and they are both going to testify about the lack of causation between chemicals to which Mr. Jordan was exposed and the symptoms of which he is complaining.
>
> Because you have chosen not to take their depositions as was contemplated by the Agreed Scheduling Order, I want to make sure there is no surprise at trial. You have been given in-depth reports from each of these experts about their opinions concerning your client, and they are going to support those facts and opinions with their general knowledge and understanding of this subject and the reasons why they do not think your client is demonstrating the symptoms of which he is complaining.

Jordan did not depose either expert in preparation for trial.

On March 19, 1999, the trial court commenced proceedings in Jordan's case. Prior to the presentation of evidence, the trial court heard argument on the parties' previously-filed motions *in limine*. CSX's attorney requested that the trial court exclude any testimony regarding Jordan's alleged exposure to chemical solvents other than TCE. CSX's attorney argued that TCE was the only chemical solvent specifically identified in the evidence, that TCE was the only chemical solvent used at CSX's Radnor Yard site, and that testimony as to other chemical solvents would be prejudicial to CSX and would confuse the jury. CSX's attorney also said that its witnesses were prepared to discuss only Jordan's exposure to TCE and that, if the trial court failed to limit the scope

of the evidence in the case, CSX would need a continuance in order to prepare its witnesses. In response, Jordan's attorney argued that the deposition testimony in the case demonstrated that Jordan had been exposed to chemical solvents other than TCE, that CSX was aware that Jordan alleged exposure to chemical solvents other than TCE, and that, consequently, the proof in the case should not be limited to exposure to one particular chemical. The trial court then addressed Jordan's attorney, stating:

> COURT: Do you want a continuance for this trial, or do you want to try it on [TCE]?

> JORDAN'S ATTORNEY: We don't dispute that [TCE] was the primary chemical. We can proceed on that basis.

> TRIAL COURT: The case will be limited to [TCE].

Thus, Jordan's attorney chose to forego a continuance and, consequently, the trial court ruled that evidence in the case would be limited to Jordan's exposure to TCE.

Jordan's attorney also made a motion *in limine* to limit the testimony of Dr. Gordon and Dr. Rosenberg solely to the opinions expressed in their reports. Jordan's attorney asserted that both reports submitted by CSX failed to provide a summary of the grounds for the doctors' opinions and that, consequently, Jordan's attorney did not receive adequate notice of the doctors' expected testimony. In response, CSX's attorney maintained that both reports sufficiently detailed Dr. Gordon and Dr. Rosenberg's opinions concerning Jordan's condition and that Jordan had an opportunity to depose both doctors but declined to do so. The trial court overruled Jordan's motion, holding that Jordan was not surprised by the doctors' opinions and that he had ample opportunity to depose both doctors prior to trial.

At trial, Jordan testified that he began working for CSX at their Radnor Yard site in March 1978. He testified that until 1987 or 1988 he regularly used liquid electric cleaner containing TCE during his employment with CSX. Jordan stated that using the electric cleaner caused him to experience dizziness, headaches, and a high feeling. Jordan acknowledged that he had abused alcohol and marijuana in the past. He said, however, that he had not consumed alcohol or smoked marijuana since 1991. Jordan also admitted that Dr. Gary Soloman, a clinical neuropsychologist who evaluated Jordan in December 1994, told him by letter that virtually all of his memory test scores were normal for a person of his age, that there was no strong evidence indicating that chemical exposure had negatively affected his basic intellectual abilities, and that he could not tell with certainty whether chemical exposure was primarily responsible for the overall difficulties Jordan was experiencing.

Dr. Michael Kelly ("Dr. Kelly"), Dr. Jack Gilliland ("Dr. Gilliland"), and Dr. Michelle Cochran ("Dr. Cochran"), testified that they believed that Jordan's condition was caused by his exposure to chemical solvents. Dr. Kelly testified that he evaluated Jordan based upon Jordan's complaints of breathing problems, memory loss, and dizziness. Based on his evaluation, Dr. Kelly

4

believed that Jordan had some impairment to his ability to think and to process information as well as deficits in attention and concentration. Dr. Kelly diagnosed Jordan as suffering from toxic encephalopathy, or brain damage, as a result of exposure to chemical solvents during his employment with CSX. He stated that he based his opinion on information that Jordan had worked with TCE and other solvents at CSX for approximately ten years, that Jordan felt "high and dizzy" while using the solvents, and that Jordan now complained of ailments associated with exposure to solvents.

Dr. Gilliland, Jordan's psychologist, testified by deposition that he believed that Jordan suffers from depression, anxiety, and memory and concentration problems. Dr. Gilliland stated that he had eliminated Jordan's use of alcohol and marijuana as well as other stresses in his life as potential causes of his mental condition. He stated that he believed, based on his evaluation and treatment of Jordan as well as Jordan's medical and personal history, that Jordan's exposure to TCE at work caused his mental problems.

Dr. Cochran, Jordan's psychiatrist, testified by videotape deposition that she believed that Jordan suffers from depression, anxiety, and memory and attention deficits. Dr. Cochran stated that she believed "to a reasonable degree of psychiatric certainty" that Jordan's condition was caused by exposure to toxic chemicals, though she characterized this conclusion as a "60/40 split," meaning that there was a sixty percent chance that Jordan's condition was caused by toxic encephalopathy and a forty percent chance that it was caused by a mood disorder. Dr. Cochran stated that she might never know which diagnosis was correct, but that she "lean[ed] toward" toxic encephalopathy because she realized that Jordan was exposed to toxic chemicals and because his level of anxiety and his mood would likely have improved over a period of time had they been caused by a mood disorder.

At trial, CSX's experts, Dr. Gordon and Dr. Rosenberg, both testified that they did not believe Jordan's condition was caused by exposure to TCE. Dr. Gordon testified that, in his opinion, Jordan's memory and concentration problems were caused by anxiety and depression due to several stress factors present in his life and not by any injury to his brain. He also speculated that Jordan's use of alcohol and marijuana and his sleep problems may have also played a role in causing Jordan's memory problems. Dr. Gordon testified that Jordan's IQ, memory and attention span were consistent with his educational and vocational background, and also consistent with the results of previous tests administered before Jordan began working for CSX. Dr. Gordon said that the consistency of the results indicated that any loss of memory or attention did not result from Jordan's alleged exposure to solvents while employed by CSX.

Dr. Rosenberg testified that, based on his experience working with patients with solvent-induced health problems, he did not believe that Jordan's condition was caused by exposure to TCE or other chemical solvents. Dr. Rosenberg stated that there is no evidence that chronic, low level exposure to TCE causes brain damage. He speculated that it would require approximately seven years of high-level occupational exposure to TCE before a person would begin to develop even mild health problems; he stated that Jordan's work for CSX did not involve occupational exposure at such

5

a high level. Dr. Rosenberg stated that Jordan's reported short-term dizziness while working with chemical solvents at CSX did not mean that he suffered brain damage.

After the evidence was presented, the trial court held a conference with the attorneys regarding the instructions that would be given to the jury. Both Jordan and CSX submitted proposed special jury instructions and proposed verdict forms. The trial court indicated that it had reviewed the materials and that it intended to use the verdict form submitted by CSX. The CSX verdict form asked, in part:

> Do you find from a preponderance of the evidence that the negligence of CSX Transportation Inc. caused damages to Plaintiff Randall Jordan?

The trial court then asked Jordan and CSX to discuss during a recess how to merge their two sets of proposed jury instructions together. After the recess, CSX's attorney indicated that they had agreed on all of the jury charges except for Jordan's proposed instruction concerning causation. The jury instruction proposed by Jordan stated, in part:

> To be a cause of an injury, the negligence must have played some part, no matter how small, in bringing that injury about.

The trial court overruled CSX's objection and held that it would use Jordan's proposed instruction on causation. Jordan proposed other jury instructions which were given to the jury. These included the following:

> A [legal] cause of any injury is a cause which in natural and continuous sequence produces the injury and without which the injury would not have occurred.
>
> * * *
>
> Negligence is the proximate cause of an injury or damage if it played any part, no matter how small, in bringing about the injury or damage.
>
> * * *
>
> Mr. Jordan must prove that CSX, with the exercise of due care could have reasonably foreseen that the conditions in which Mr. Jordan worked could cause an injury to him.

The record on appeal does not indicate that Jordan objected to any proposed jury charge during the conference with the trial judge.

Subsequently, during the jury's deliberations, the jury submitted a question to the trial court, asking "[i]s the term 'injury' synonymous with brain damage or memory loss, depression, and

6

anxiety?" Outside the presence of the jury, the trial court asked the attorneys for both Jordan and CSX whether "there [is] any reason for me not to say yes?" Both attorneys indicated that they had no objection to this answer.

After deliberation, the jury found CSX negligent, but found that CSX's negligence did not cause damages to Jordan. Consequently, on April 6, 1999, the trial court entered an order dismissing Jordan's complaint with prejudice.

On April 22, 1999, CSX filed a post-trial motion under Rule 54.04(2) and Rule 68 of the Tennessee Rules of Civil Procedure, seeking reimbursement for its discretionary costs. CSX sought discretionary costs in the amount of $33,144.77, $26,751.75 of which accrued after CSX served Jordan with an offer of judgment. On May 5, 1999, Jordan filed a motion for a new trial. In a subsequent pleading, Jordan argued that a new trial was necessary because the verdict form and the trial court's answers to the jury's question regarding causation and the definition of the term "injury" were inconsistent with the jury instructions, because the trial court erred in limiting the trial to exposure from trichloroethane, because the testimony of CSX's experts should have been excluded or limited to their reports, and because the jury's verdict was contrary to the evidence. The trial court denied both CSX's post-trial motion for discretionary costs and Jordan's motion for a new trial. CSX and Jordan each filed a notice of appeal on the same day.[2]

On appeal, CSX argues that the trial court erred in denying its post-trial motion for reimbursement of its discretionary costs under Rules 68 and 54.04(2) of the Tennessee Rules of Civil Procedure. CSX argues that an award of its discretionary costs not included in the court clerk's bill of costs was mandatory under Rule 68, since Jordan rejected CSX's offer of judgment. CSX also argues that the trial court abused its discretion in denying CSX's motion for discretionary costs under Rule 54.04(2). Jordan argues that Rule 68 provides only for the recovery of court costs and that the trial court's denial of discretionary costs under Rule 54.04(2) was proper and within its discretion.

On appeal, Jordan argues that the trial court erred in its jury instructions, in its response to the jury's inquiry during deliberation, in using CSX's jury verdict form, in refusing to limit the testimony of CSX's expert witness, and in limiting the proof at trial to the effect of TCE and not other substances. Jordan asserts that the jury verdict was contrary to the weight of the evidence presented, and argues that the trial court erred in requiring Jordan to pay half the cost of preparing the trial transcript.

We first consider CSX's argument that under Rule 68 of the Tennessee Rules of Civil Procedure, CSX was entitled to reimbursement of its discretionary costs not included in the court clerk's bill of costs, such as expert witness fees for trial testimony. The trial court awarded CSX

---

[2] The clerk's file stamps on the notices of appeal indicate that CSX filed its notice at 1:42 p.m. and that Jordan filed his notice at 3:17 p.m.

only costs included in the bill of costs prepared by the trial court clerk. Rule 68 of the Tennessee Rules of Civil Procedure provides, in part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property, or to the effect specified in the offer, with costs then accrued.
>
> * * *
>
> An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in the proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall pay all costs accruing after the making of the offer.

*Id.* The Committee Comment following Rule 68 states that "[t]he use of the procedure provided for by this Rule may facilitate the settlement of cases in many instances." *Id.*

Tennessee courts have considered Rule 68 in previous decisions. In *Person v. Fletcher*, 582 S.W.2d 765 (Tenn. Ct. App. 1979) (*cert. denied*), the defendant argued on appeal that the trial court erred in failing to award her costs under Rule 68 for photographs used at trial, for court reporter expenses, and for attorney's fees. *Id.* at 766. The defendant had made a Rule 68 offer of judgment to the plaintiffs. The plaintiffs refused the offer, and the judgment following trial was less favorable than the offer of judgment. The defendants then moved the trial court to assess all costs against the plaintiffs under Rule 68. The trial court denied the motion, stating that "the provisions of [Rule 68] are not interpreted to permit any costs other than the costs taxed by the Clerk of the Court. . . ." *Id.* The defendant argued on appeal that Tennessee's Rule 68 is patterned after Rule 68 of the Federal Rules of Civil Procedure and that, under federal law, costs of the type sought by the defendant were permitted. *See Id.*

On appeal, the Court of Appeals observed that Tennessee's Rule 68 was patterned after Federal Rule 68. *Id.* The appellate court noted, however, that Tennessee had not enacted a law comparable to 28 U.S.C. § 1920, which expressly authorized a judge or clerk of any federal court to tax as costs items of the type sought by the defendants.[3] *Id.* The court stated that "[w]hat

---

[3] Section 1920, which defines the costs allowed under Rule 54(d) of the Federal Rules of Civil Procedure, currently provides that a judge or clerk of any federal court may tax as costs any of the following:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in

constitutes costs is determined from legislative enactment." *Id.* at 767 (citing 20 Am. Jur. *Costs* § 52). The court found the existence of the federal statute to be "the controlling distinction" between Tennessee's Rule 68 and Federal Rule 68 insofar as which items were taxable as costs. *Id.* at 766-767. On that basis, the court affirmed the trial court's denial of the defendant's motion for costs under Rule 68. *Id.* at 767.

In 1993, after the decision in *Person*, Rule 54.04 of the Tennessee Rules of Civil Procedure was amended to expressly define the discretionary costs allowable to a prevailing party.[4] The current version of Rule 54.04 provides:

> (1) Costs included in the bill of costs prepared by clerk shall be allowed to the prevailing party unless the court otherwise directs. . . .

> (2) Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs. . . .

Thus, Rule 54.04 was amended to include items such as court reporter expenses and expert witness fees within the definition of discretionary costs.

In 1999, *Person* was cited in *Woods v. Walldorf*, 26 S.W.3d 868 (Tenn. Ct. App.1999) (*perm. to app. den.*). In *Woods*, the plaintiff sued for discrimination on the basis of race and sex.

---

the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation for court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
> * * *
28 U.S.C. § 1920.

[4] Prior to the 1993 amendments, Rule 54.04 provided, in part:

> (1) Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs. . . .
> (2) A party who desires to recover discretionary costs or any recoverable costs not included in the bill of costs prepared by the clerk of the trial court shall move the court to assess discretionary costs and attach thereto an itemized and verified bill of costs. . . .

*Id.*

*Id.* at 870. The jury returned a verdict in favor of the defendants. *Id.* at 872. Prior to trial, the defendants had made an offer of judgment under Rule 68, which was rejected. *Id.* at 878. The defendants made a post-trial motion for costs under Rule 68, including court reporter fees incurred after the offer of judgment. *Id.* The trial court awarded the defendants' court reporter charges incurred after the date of their offer of judgment to the plaintiff. *Id.* at 878-79. It also granted the defendants other discretionary costs under Rule 54.04(2). *Id.* at 879. The plaintiff appealed the award of costs against her. On appeal, this Court reversed the trial court's award of costs under Rule 68, citing *Person* for the proposition that costs under Rule 68 include only "the costs taxed by the Clerk of the Court. . . ." *Id.* (citing *Person*, 582 S.W.2d at 766). The Court ruled that the trial court's award of costs under Rule 54.04(2) was within its discretion. *Id.* The *Woods* Court did not address whether the amendment of Rule 54.04 to include items such as court reporter expenses for depositions made such expenses included in the costs to be awarded under Rule 68.

Tennessee's Rule 68, like its federal counterpart, was enacted with the intention of "facilitat[ing] the settlement of cases in many instances." Tenn.R.Civ.P. 68, Committee Comment. Interpreting Rule 68 of the Tennessee Rules to provide for an award only of costs taxed by the clerk of the court and not discretionary costs of the type sought by CSX in this case does little to motivate the parties to undertake a meaningful assessment of the risks and costs of litigation and does not significantly facilitate settlement. *See, e.g., Staffend v. Lake Central Airlines, Inc*., 47 F.R.D. 218, 219-220 (N.D. Ohio 1969) (examining Federal Rule 68 and stating that "[t]he provision in the rule which imposes costs upon a party who refuses an Offer of Judgment and who later recovers no more than the offer . . . puts teeth in the rule and makes it effective by encouraging acceptance"). However, federal cases cited by CSX interpreting Rule 68 of the Federal Rules of Civil Procedure have awarded such costs only where the underlying substantive statute that provided the basis for the plaintiff's claims defined "costs" as including other items, such as attorney's fees. See for example, *Crossmann v. Marcoccio*, 806 F.2d 329 (1st Cir. 1986), citing *Marek v. Chesny*, 473 U.S.1, 105 S.Ct. 3012, 87 L.Ed2d 1 (1985). In this case, there are no underlying statutes defining "costs" to include items such as expert witness fees. CSX cites no case in which Rule 54.04 of the Tennessee Rules of Civil Procedure, or its federal counterpart, have been the sole basis for an award of such costs under Rule 68 of the Tennessee Rules of Civil Procedure or Rule 68 of the Federal Rules. Thus, while the policy arguments supporting CSX's argument are appealing, in view of *Person*, *Woods* and the federal caselaw cited by CSX, we must affirm the trial court's holding that Rule 68 mandates an award in this case only of costs included in the bill of costs prepared by the clerk of the court.

CSX also argues that the trial court abused its discretion in denying CSX's post-trial motion for discretionary costs under Rule 54.04 of the Tennessee Rules of Civil Procedure. After listening to the proof, hearing the jury's verdict and considering CSX's post-trial motions, the trial court denied the motions, commenting that "to use it as that kind of hatchet of some kind I believe would be onerous in this case." We find no abuse of discretion in the trial court's decision.

On appeal, Jordan disputes a number of the trial court's decisions as well. Jordan argues first that the trial court erred in denying his motion for a new trial. He contends that the jury instruction

given by the trial court regarding the definition of "causation" was both incorrect and inconsistent with the definition given in the verdict form. Jordan also asserts that the trial court's answer to the jury's inquiry during deliberations regarding the definition of the term "injury" rendered its jury instruction as to "foreseeability" incorrect. Jordan maintains that these alleged errors resulted in placing a greater burden of proof upon him than appropriate. CSX notes that Jordan failed to object at trial to either the trial court's jury instruction or to its answer to the jury's subsequent inquiry regarding the definition of "injury." CSX asserts that these issues are therefore waived on appeal. CSX also maintains that the trial court's answer concerning the meaning of "injury" was not in error because Jordan produced no evidence of any injury other than depression, anxiety, memory loss, or loss of attention and concentration.

The standard for appellate review of a trial judge's jury charge was stated in *City of Johnson City v. Outdoor West, Inc.*, 947 S.W.2d 855 (Tenn. Ct. App. 1996):

> We review the jury charge in its entirety to determine whether the trial judge committed reversible error. Jury instructions are not measured against the standard of perfection. The charge will not be invalidated if it "fairly defines the legal issues involved in the case and does not mislead the jury." Furthermore, a particular instruction must be considered in the context of the entire charge.

*Id.* at 858 (citations omitted).

Rule 49.01 of the Tennessee Rules of Civil Procedure permits a trial court to require the use of a special verdict form comprised of detailed factual questions for the jury. *See* Tenn. R. Civ. P. 49.01. The rule "accords trial courts great latitude in using special verdict forms and tailoring special interrogatories to meet the needs of each unique case." *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 910 (Tenn. 1999) (citing *Petty v. Estate of Nichols*, 569 S.W.2d 840, 847. As the court in *Concrete Spaces, Inc. v. Sender* noted:

> Special verdict forms should use the same terms as those used in the jury instructions. They should repeat and highlight the salient issues discussed in the instructions. Inconsistencies with jury instructions and the special verdict form may confuse the jury.

*Id.* at 910-911 (internal citations omitted).

In this case, the trial court adopted CSX's proposed jury form, but utilized instructions concerning causation that were either proposed by Jordan or to which Jordan's counsel agreed. The record contains no indication that Jordan's counsel objected to the trial court that the use of CSX's proposed verdict form was inconsistent with the jury instructions given. Likewise, the record contains no indication that Jordan's counsel objected to the answer given by the trial judge to the jury's inquiry during deliberations. Indeed, when asked by the trial judge whether there was any reason not to say "yes" in response to the jury's question, Jordan's counsel responded, "I don't think

so." Moreover, after reviewing the instructions as a whole and the trial judge's response to the jury's question, we find that the jury charge in its entirety, and the response to the jury's inquiry, "fairly define[] the legal issues involved in the case and [do] not mislead the jury." *City of Johnson City*, 947 S.W.2d at 858. Consequently, we affirm the trial court's verdict form and jury instructions.

Jordan next argues that the trial court erred in limiting the scope of the trial to only the harm caused by exposure to TCE and that a new trial is warranted on this basis. Jordan asserts that CSX was aware of Jordan's claims regarding exposure to other chemical solvents. CSX contends that Jordan expressly waived any objection to the trial court's decision to limit the scope of the trial to the issue of exposure to TCE only.

In this case, the trial court asked Jordan's counsel at the outset of trial whether he wished to proceed solely on the issue of his exposure to TCE or whether he wished to continue the trial and have the jury consider evidence on Jordan's exposure to other chemical solvents. Jordan's attorney replied, "We don't dispute that TCA [TCE] was the primary chemical. We can proceed on that basis." Consequently, Jordan expressly waived any objection to the trial judge's limitation on the scope of the trial. This issue is without merit.

Jordan argues that the trial court erred in refusing to exclude the testimony of CSX's expert witnesses or to limit their testimony to the information contained in their reports. Jordan contends that the reports submitted by Dr. Gordon and Dr. Rosenberg failed to adequately relate the opinions, as well as summaries of the grounds for the opinions, to which CSX expected the doctors to testify at trial. Jordan asserts that he was unduly prejudiced at trial by CSX's failure to adequately disclose its experts' opinions in accordance with Rule 26 of the Tennessee Rules of Civil Procedure. CSX argues that the expert reports provided to Jordan were thorough and that they accurately reflected the experts' anticipated trial testimony. CSX also contends that Jordan's claim of "surprise" at trial is belied by his failure to depose CSX's expert witness as provided for in the agreed scheduling order.

Rule 26.02 of the Tennessee Rules of Civil Procedure provides a party the opportunity to discover information about witnesses another party intends to call as an expert at trial. It states:

> (i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

> (ii) A party may also depose any other party's expert witness expected to testify at trial.

Tenn.R.Civ.P. 26.02(4)(A)(i) and (ii). In this case, CSX fully disclosed to Jordan its intent to call Dr. Gordon and Dr. Rosenberg as expert witnesses and included with the letter copies of reports in which the doctors discussed their conclusions regarding Jordan's claimed injuries.

It is undisputed that Jordan had ample opportunity to depose both of CSX's expert witnesses. Jordan chose not to do so. In fact, when it appeared to CSX that Jordan had chosen not to depose its expert witnesses prior to trial, CSX sent Jordan a letter emphasizing that both experts would "testify about the lack of causation between chemicals to which Mr. Jordan was exposed and the symptoms of which he is complaining" in order to ensure that "there is no surprise at trial." After reviewing the expert's reports, their testimony and the record as a whole, we find that CSX's disclosure of its expert witnesses and their anticipated testimony at trial was sufficient to meet the requirements under Rule 26. Consequently, the trial court's decision on this issue is affirmed.

Jordan also argues that the jury's verdict was contrary to the evidence presented at trial and that the trial court should have reversed the verdict as the "thirteenth juror." Jordan asserts that he established that CSX was negligent and that its negligence, at a minimum, played a part in Jordan's injuries. CSX contends that the evidence supported the jury's verdict.

As the thirteenth juror, the trial judge is under a duty to independently weigh the evidence and determine whether the evidence preponderates in favor of or against the verdict. *Shivers v. Ramsey*, 937 S.W.2d 945, 947 (Tenn. Ct. App. 1996), *perm. to app. den.* Jan. 21,1997. Where the trial judge has approved the jury's verdict, our standard of review is whether there is any material evidence to support the verdict. *See* Tenn.R.App.P. 13(d); *see also Foster v. Bue*, 749 S.W.2d 736, 741 (Tenn. 1988). After reviewing the record as a whole, we find that the trial court properly performed his duty as thirteenth juror and that there is material evidence to support the jury's verdict. The decision of the trial court on these issues is affirmed.

Finally, Jordan argues that the trial court erred in ordering him to pay half of the costs to prepare the trial transcript for appeal. He states that CSX, as the appellant, is required to pay the costs to prepare the trial transcript under Rule 24 of the Tennessee Rules of Appellate Procedure. CSX argues that both Jordan and CSX appealed decisions of the trial court and that consequently the trial court's division of the costs to prepare the trial transcript was appropriate and within the trial court's discretion.

Rule 24 of the Tennessee Rules of Appellate Procedure places on the appellant the responsibility of preparing a transcript of that part of the evidence necessary to convey a fair, accurate and complete account of what transpired with respect to the issues that are the bases of appeal. Tenn.R.App.P. 24(b). Rule 24(b) further provides:

> Unless the entire transcript is to be included, the appellant shall, within 15 days after filing the notice of appeal, file with the clerk of the trial court and serve on the appellee a description of the parts of the transcript the appellant intends to include in the record, accompanied by a short and plain declaration of the issues the appellant

13

intends to present on appeal. If the appellee deems a transcript of other parts of the proceedings to be necessary, the appellee shall . . . file with the clerk of the trial court and serve on the appellant a designation of additional parts to be included. The appellant shall either have the additional parts prepared at the appellant's own expense or apply to the trial court for an order requiring the appellee to do so. . . .

*Id.*

CSX and Jordan each filed notices of appeal in this case on the same day, contesting separate rulings of the trial court. Over a month after the notices of appeal were filed, CSX filed a motion asking the trial court for an order requiring Jordan to pay the entire cost of the preparation of the trial transcript. The trial court subsequently entered an order requiring CSX and Jordan to each bear half of the costs for production of the trial transcript. We find no error in the trial court's decision.

The decision of the trial court is affirmed. Costs on appeal are assessed equally against the appellee, Randall E. Jordan, and the appellant, CSX Transportation, Inc., and their sureties, for which execution may issue if necessary.

_____

HOLLY KIRBY LILLARD, J.

14