IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 15, 2002 Session

## CITY OF SEVIERVILLE v. BILL GREEN, ET AL.

**Appeal from the Circuit Court for Sevier County**
**No. 97-194-II and No. 97-195-II     Richard R. Vance, Judge**

**FILED JULY 30, 2002**

**No. E2001-02467-COA-R3-CV**

This appeal from the Sevier County Circuit Court questions whether the Trial Court erred in awarding landowners compensation for incidental damages to their property because the City of Sevierville changed the frontage access to their property from unlimited access to restricted access. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the Appellant, City of Sevierville

Robert L. Ogle, Jr., Sevierville, Tennessee, for the Appellees, Bill Green, Claudine Green, Dallas Coffman, and Jean Coffman

### OPINION

In this appeal from the Circuit Court for Sevier County the Appellant, the City of Sevierville (hereinafter 'the City') contends that the Trial Court erred in its award of incidental damages to the Appellees, Bill Green, Claudine Green, Dallas Coffman and Jean Coffman (hereinafter 'the Landowners') for the restriction of access to their property.

The subject property in this matter is located on U.S. Highway 441 in the City of Sevierville and consists of two adjoining tracts designated in the record as Tract 5, owned by the Appellees, Bill Green, Claudine Green, Dallas Coffman and Jean Coffman, and Tract 7, owned by Mr. Green and

Mr. Coffman. In March of 1997 a portion of each of the tracts was condemned upon petitions[1] of the City so that the City could implement a road construction project to widen U.S. Highway 441 from four lanes to six lanes. At the time of condemnation lessees of the Landowners were operating a fruit stand and country market on Tract 5 and a convenience store and gasoline outlet on Tract 7. It is undisputed that there was unrestricted access to the front of each tract from Highway 441 at the time of condemnation.

In granting the City's petition for condemnation the Trial Court allowed the City to take a portion of the frontage of Tract 5, a slope easement as to Tract 7 and temporary construction easements as to both tracts. Additionally, in accordance with the construction plan, sidewalks, curbing and guttering were installed between Highway 441 and Tracts 5 and 7 with the result that there was no longer unlimited access to the Landowners' property from Highway 441. Instead, access to the property from Highway 441 was restricted to two driveways constructed by the City - one to serve Tract 5 and one to serve Tract 7.

In July of 2001 a hearing was conducted to determine the amount of compensation which should be allowed the Landowners in consequence of the road construction project. As stated by the Trial Court in its judgment of September 7, 2001, the principal issues at this hearing were "the value of the land taken and incidental damage to the property as a result of highway widening, diminution of the value of the remaining property and changing the access to the property from being unlimited along the highway frontage to being restricted by curbing with two limited access openings." Based upon the evidence presented and the arguments of counsel the Trial Court found "that Tract 5 suffered incidental damages for restricted access in the amount of $40,000.00 and that Tract 7 suffered incidental damage for restricted access in the amount of $30,000.00."

The City's sole issue raised in this appeal, which we restate, is whether the Trial Court erred in granting the Landowners incidental damages by reason of the fact that access to the Landowners' property was restricted as a result of the City's road construction project.

Pursuant to T.R.A.P. 13(d), we review a non-jury case such as this one *de novo* upon the record of the trial court. We presume that a trial court's findings of fact are correct and, unless evidence on the record preponderates to the contrary, we must affirm those findings. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993). There is no presumption of correctness with respect to a trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996).

Before we address the issue stated above we note the City's assertion that the Trial Court erred in awarding incidental damages based on the discrepancy in elevation between the Landowners' property and Highway 441 after completion of construction. Although the record shows that evidence was presented at trial by both parties with respect to the change in elevation between the

_____

[1] Although this matter was initiated as two cases upon the filing of a separate petition as to each tract, these cases were subsequently consolidated by agreement of the parties and are consolidated for purposes of this appeal.

property and the highway and the causes and impact of that change, we do not find that the Trial Court's award of incidental damages was based upon that factor.  Nowhere in its judgment does the Trial Court indicate that it considered change in elevation in awarding incidental damages in this case.  It is our determination that the Trial Court's award of incidental damages was based exclusively upon its finding that, as a result of the City's actions, the Landowners' property was deprived of unlimited access to Highway 441. Consistent with this determination we note the specific language in the Court's judgment with reference to the change in access "to the property from being unlimited along the highway frontage to being restricted by curbing with two limited access openings".  Accordingly, we decline to address the City's argument that the Trial Court erred in granting damages based upon elevation change.

We now address the City's assertion that incidental damages should not have been allowed upon the finding that access to the Landowners' property was unlimited prior to construction and restricted to two driveways thereafter.  Various arguments are presented by the City in support of this assertion.

First, the City argues that the normal disturbances to business and traffic caused by a construction project like the one in this case are not compensable.  In support of its argument the City cites the following language from *State v. Cooper*, an unreported opinion of this Court filed in Nashville on November 3, 1989:

> Damages resulting from inconvenience during construction are not recoverable in a condemnation action.  *Cooper, ibid* at page 3.

> In accordance with the prevailing rule, it has been held that mere inconvenience in carrying on the business by reason of a condemnation cannot be considered. Thus, in the absence of statutory authorization to the contrary, the temporary obstruction of a highway (or lands other than those upon which the business is conducted), resulting in the interruption of such business, does not give rise to a claim for compensation.  Where, as the result of the improvement of a street, there is diversion of traffic causing a loss to a business fronting upon such street it has been held, generally, that such loss is not to be considered in fixing the damages of the owner of such business.  *Cooper, ibid* at page 4.

We do not agree that the rule stated in *State v. Cooper*, *ibid*. is relevant under the facts presented in this case.  In *Cooper* the issue before the Court, with respect to which the above cited language pertains, was whether the trial court erred in failing to allow the landowner to testify as to the effect of the use of a *temporary* construction easement upon accessibility to the landowner's service station during construction. The issue now before this Court involves *permanent* restriction of access as a result of construction, not temporary loss of access during construction. We note that the Trial Court specifically excludes compensation for losses incurred *during* construction in its judgment of September 7, 2001:

Testimony regarding loss of business suffered by the leasehold tenant of the property during construction was immaterial. It is settled law that a landowner cannot be compensated for inconvenience or loss of business occasioned by a highway construction project.

The City also cites the case of *Sadler d/b/a Xanadu Video v. State of Tennessee*, an unreported opinion of this Court filed in Nashville on March 13, 2001. The City argues that, although the *Sadler* case involved a claim for *temporary* inconvenience resulting from road construction, in denying the claim the Court referenced three cases in which complaining property owners were denied compensation when access to their property was *permanently* impaired - *City of Memphis v. Hood*, 345 S.W.2d 887 (Tenn.1961); *Ambrose v. City of Knoxville*, 728 S.W.2d 338 (Tenn. Ct. App. 1986) and *Hayes v. City of Maryville*, 747 S.W.2d 346 (Tenn. Ct. App. 1987).

It is our determination that the instant case is significantly different from these three cases each of which involved the redirection of traffic along the street adjacent to the landowner's property from two-way to one-way. In each of these cases the landowner's complaint arose from the city's change of traffic flow along a public road. In the *Hood* case the Tennessee Supreme Court recognized that the "change of the flow of traffic, making a street a four-lane highway or diverting traffic one way or the other " comes from "the exercise of the police power of the governing parties" and damages resulting therefrom are non-compensable. In the case before us the impairment of access to the Landowners' property resulted solely from the construction of curbs, sidewalks and guttering between such property and Highway 441 and we find nothing in the record that compels us to the conclusion that the purpose or effect of this construction was to redirect the flow of traffic along the Highway. The Court in *Hood* additionally recognized the right of access at page 889:

Of course, the property owners fronting upon a public thoroughfare have a right to free and convenient access thereto. This right of ingress and egress attaches to the land. It is a property right, as complete as ownership of the land itself.

We find nothing in the three cases cited by the Court in *Sadler* that compels us to find that the City's restriction of access to the Landowners' property in this case is non-compensable.

The City next argues that "full access" to the Landowners' property is still available as evidenced by the fact that "conversion vans, large dump trucks, sports utility vehicles, vehicles pulling trailers and campers, and cars" can still enter the property, use the parking lot, and purchase gasoline. The City further argues that, in fact, there is now actually *greater* access to the property because in the course of its construction project the City added a driveway connecting the property to Carl Street, a side street from which the property had not previously been accessible. The City asserts that the Landowners retain free and convenient access to the property, that the Landowners have established no particular effect on their property as a result of the decrease in access and argues that simply because some access has been limited, the Landowners should not automatically receive damages.

-4-

Even accepting the City's argument that "full access" to the property remains available we still find that access to the property has been impaired in the sense that frontage access that was previously unlimited is now restricted to two driveways. The fact that the same type of vehicle can still enter the property does not belie the fact that there has been a restriction of access with respect to the size of the area by way of which the property can be entered. We believe that this restriction would necessarily change the amount of traffic in and out of the property because it is easier for a driver to enter property with unlimited access than it is to enter property where access is restricted. We further disagree with the City's argument that the addition of the driveway allowing access to the property from Carl Street suffices to compensate for the restriction of frontage access along Highway 441and we find no proof in the record that the addition of this driveway offsets the impairment of access to Highway 441.

Our review of the trial record reveals testimonial evidence of impairment to the property in consequence of the limited access imposed by the City. In this regard we note the following testimony of Betty Krachey, a lessee who operated a gasoline outlet on the property before and after the construction project:

> Q And what about after they constructed the road, put in the curbing and also the driveway, the driving area? Did you have any problem there?
>
> A Yes.
>
> Q What was the problem?
>
> A Well, I had no more camper business after that because campers couldn't get -- the way they had the driveways set up, you couldn't get into the pumps with like a camper or a truck pulling a big trailer.
>
> Q Did you have a camper business, truck business before that?
>
> A Lots of it, yes.
>
> Q What problem did they have getting in and out?
>
> A The way they had to turn in with their campers, you just couldn't get to the pumps at all. They had to back in and out and they could only use the one on the far side by the road, they could never use that one anymore because of the way they had to turn in. They could only use the one closest to the store if they could even get into that spot.

We also note the testimony of Mr. Coffman to the effect of the limitation of access:

-5-

Q Now, after the construction in the condition the property was in, the location of your pumps were the same and so on, you know. Could you operate that as a filling station?

A No.

Q Why?

A Because you'd have to go on past the pumps and turn around and come back, being behind the curb, and our business just went to pot.

Further, G.H. Conner, a real estate broker and auctioneer, testified that the property suffered total incidental damages of $179,798.00 and that a portion of these damages were attributable to the limitation of access to the property.

We believe that this evidence is sufficient to support a finding that free and convenient access to the property has been impaired as a result of the City's construction and that such impairment has had a particular effect on the property. We do not find evidence in the record which preponderates to the contrary.

The City next contends that all property owners along the Parkway received sidewalks and curbing as a result of the City's construction project and that all those property owners who had open frontage prior to the construction project now also have restricted access problems. The City cites the case of *Betty v. Metropolitan Govt. of Nashville & Davidson County*, 835 S.W.2d 1 (Tenn. Ct. App. 1992) for the rule that, in order to prove damages to their property, the Landowners must show that the access problems of which they complain "produce a particular and direct effect on the property involved not shared by the general public". We believe that the above cited testimony of Ms. Krachey and Mr. Coffman provide sufficient evidence that limitation of access to the property in this case produced "a particular and direct effect on the property not shared by the general public." The City's assertions to the contrary are without merit.

Finally, the City argues that the Landowners redeveloped the property subsequent to the road construction project and that State regulations would have required that the Landowners implement the same curb cuts and designated access points as were constructed by the City. The City argues that the Landowners would have, therefore, lost their unlimited access anyway and should not be allowed to take advantage of the road project timing to make money at the City's expense. With respect to this argument we agree with and adopt the following language from the judgment of the Trial Court:

> There was an issue raised as to whether the defendants planned a future development of the property, which would have resulted in restricted access to comply with current restrictions even if the highway project and condemnation had not taken place. This is irrelevant, as the Court must consider the property as

it existed at the time of taking. Owners of property have choices for future development, but condemnation by a taking authority results in an involuntary imposition of restricted land use upon the property owner, regardless of the owners' plans, options, and choices.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause is remanded for such further proceedings as may be necessary and for collection of the judgment and costs below.  Costs of  appeal are adjudged against the City of Sevierville and its surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE