IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 5, 2006 Session


**PUN WUN CHAN, d/b/a #1 CHINA BUFFET v. STATE OF TENNESSEE, KNOX COUNTY and the CITY OF KNOXVILLE**


**Direct Appeal from the Circuit Court for Knox County, Division I**
**No. 1-373-03     Hon. Harold Wimberly, Circuit Judge by Interchange**

———————————

**No. E2005-01391-COA-R3-CV   - FILED MAY 9, 2006**

———————————


In this inverse condemnation action, the jury returned a verdict for the plaintiff which was approved by the Trial Court after a slight reduction in the amount.  The State appealed and we affirm.


**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**


HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

Paul G. Summers, Attorney General and Reporter, and Cynthia L.  Paduch, Senior Counsel, Knoxville, Tennessee, for appellants.

George W. Morton, Jr., and J. Myers Morton, Knoxville, Tennessee, for appellee.



**OPINION**



In this condemnation action, plaintiff sued defendant State, charging that the State was liable for damages to the plaintiff's leasehold interest in a restaurant property located at 6300 Papermill Road, in Knoxville.  Plaintiff alleged the State had taken part of the property for a road-widening project, and had compensated the landlord, but not plaintiff, for his incidental damages for the loss of parking lot space and the loss of use of the front of the entrance to the restaurant.  The State answered, denying liability and asserting estoppel by deed, by stating that it had received a

Warranty Deed from the owner of the property, Good Times, Ltd., who had sold the State .125 acres plus easements for $222,000.00. The State asserted as an affirmative defense that plaintiff assumed the risk of such a taking under the lease, and agreeing to pay the same rent even though it lost 20% of its parking space due to the taking. The defendants sought to add Good Times, Ltd., the property owner, as a defendant pursuant to Tenn. R. Civ. P. 19.01, which the Trial Court denied, but the Court Ordered consolidation of this case with a separate action filed by the State and the County against Good Times, Ltd. Subsequently the State sought a continuance of the action, and plaintiff's lawsuit was allowed to go forward while the State's claims against Good Times, Ltd., and Nicholas Cazana were held in abeyance.[1]

A jury trial was held on November 16 and 17, 2004, and following trial, the jury found in favor of the plaintiff and returned a verdict of $100,000.00. The Court entered a Judgment awarding plaintiff $100,000.00 plus interest, and subsequently responding to defendants' Motion for JNOV, and a Motion for a New Trial, the Court entered an Order denying the Motions but remitted the Judgment to $98,800.00, which the plaintiff accepted in open court. Defendants have appealed and raise the following issues:

1. Did the Trial Court err in its legal determination that plaintiff had not contracted away his right to participate in the taking proceeds in the lease?

2. Did the Trial Court abuse its discretion when it denied the State's motion to prohibit/strike the testimony of Fletcher, as his testimony lacked a proper foundation and would not substantially assist the jury?

3. Did the Trial Court err when it refused to give the State's requested jury instruction, especially since the question submitted to the jury was "whether the Plaintiff had shown himself entitled to recover compensation that would be recognized under our laws governing condemnation or eminent domain"?

4. Did the Trial Court err when it denied the State's motion to join Good Times, Ltd., and Cazana as parties?

5. Did the Trial Court err in admitting two photographs into evidence which showed the construction work in front of the restaurant?

6. Did the Trial Court err in denying the State's Motion for New Trial as the verdict was against the weight of the evidence and was the result of passion, prejudice, sympathy, caprice and/or confusion on the part of the jury?

Defendant insists that in plaintiff's Lease Agreement, he contracted away any right to recover in this action. The Lease provides:

---

[1]Cazana was a general partner in Good Times, Ltd.

The Lessee shall not be entitled to participate in or receive any part of the damages or award which may be paid or awarded to the Lessor by reason of a Taking, except where such award specifically provides for reimbursable expenses for lessee under applicable law. However, nothing herein shall operate to deprive the Lessee of the right to make a separate claim against the condemning authority for any damages suffered by Lessee and any award available to Lessee in its own right.

The State concedes that if the language of the lease provision is plain and unambiguous, the Court must interpret it as written according to its plain terms. This lease is not ambiguous. It expressly states that nothing in the lease operates to deprive plaintiff of his right to file a claim against the State for any damages he suffered and any award he is entitled to in his own right. The Trial Court correctly ruled that the lease did not prohibit plaintiff from filing an inverse condemnation suit for any damages to his leasehold.

The State argues the Trial Court abused its discretion in allowing Robert Jeffrey Fletcher to testify regarding the damages plaintiff suffered, on the grounds there was not a proper foundation for this testimony. Fletcher testified that he had seen David Pipkin's appraisal (Pipkin appraised the property on behalf of the State), and that he agreed with Pipkin's appraisal regarding the monies the landlord received from the State. The substance of Fletcher's testimony was that Pipkin's appraisal awarded damages for the loss of the parking in front of the restaurant, which Pipkin stated would adversely affect the utility of the property as a restaurant. Fletcher testified that after the taking, the landlord was still receiving the same rent from plaintiff, so plaintiff was the one affected by the loss of the parking, not the landlord. Fletcher also testified that Pipkin found the loss of the parking to be worth $122,000.00, and then opined that these damages should have gone to the tenant and not the landlord. Fletcher then calculated the present value of the incidental damages to the tenant to be $98,800.00. He explained that the parking spaces were not taken until May 2003, so his amount was less than Pipkin's value from some months earlier of $122,000.00. He further explained that the damages were for the tenant having to pay more in rent than the property was worth after the taking. Thus, the basis of his opinion was that the lease was worth the rent being paid before the taking, but was not worth the rent being paid after the taking, the difference being approximately $1,500.00 per month, which he multiplied by the remaining months in the lease to arrive at the amount of plaintiff's incidental damages.

The State argues that this testimony was improper and should not have been considered because Fletcher did not value the leasehold interest as required by *State ex rel. Smith v. Hoganson*, 588 S.W.2d 863 (Tenn. 1979) (leasehold value determined by subtracting rent due from fair market rental value).

The recovery of incidental damages to the remainder of a leased property is allowed, in addition to a recovery for the leasehold value. *See, e.g., Hoganson, supra*; *State ex rel. Dept. of Transportation v. Gee*, 565 S.W.2d 498 (Tenn. Ct. App. 1977). Generally, incidental damages are allowed in condemnation cases where access to and utility of the remaining property has been impaired by the taking of part of the property, which has caused a loss of fair market value in the

remainder. *See State ex rel. Shaw v. Gorman*, 596 S.W.2d 796 (Tenn. 1980); *City of Sevierville v. Green*, 125 S.W.3d 419 (Tenn. Ct. App. 2002); *Shelby County v. Kingsway Greens*, 706 S.W.2d 634 (Tenn. Ct. App. 1985); *State ex rel. Shaw v. Shofner*, 573 S.W.2d 169 (Tenn. Ct. App. 1978). This rationale applies here, where the fair market value of the property has been affected by a significant and permanent loss of parking space, which has resulted in the loss of access to and utility of the restaurant. Fletcher expressed the opinion that the loss of parking damaged the remainder of the property, and that since the tenant was the one who would suffer those damages, he should be compensated. We conclude the Trial Court did not abuse its discretion in allowing Fletcher's testimony.

The State argues that the Trial Court erred by failing to give certain instructions to the jury. We have previously said the trial court's instructions to the jury must be accurate, and should consist of plain words that the jurors will understand, but perfection is not required. *Grissom v. Metropolitan Gov't of Nashville*, 817 S.W.2d 679 (Tenn. Ct. App. 1991). We are required to review the entire charge, and "will not invalidate it as long as it fairly defines the legal issues involved in the case and does not mislead the jury." *Id.* at 685.

Regarding the pattern instruction dealing with leasehold value, the Court did not read the pattern instruction verbatim, but properly instructed the jury on same, and only omitted the language dealing with apportionment between landlord and tenant, which was inapplicable here. Similarly, the other instructions regarding value which appellant complains were adequately covered in the charge given, and the charge was not unfair or misleading. The instruction which the State requested that dealt with takings generally and diminished leasehold value was adequately covered by the entire charge. Moreover, parts of it were not relevant since plaintiff was not claiming a "bonus" value in the lease. We conclude the jury instructions given by the Trial Court fairly defined the legal issues and were not misleading to the jury, and thus there was no reversible error.

The State claims that the Trial Court erred when it denied the State's motion to join Good Times, Ltd., and Cazana as parties, pursuant to Tenn. R. Civ. P. 19 or 20. Arguably, complete relief could not be afforded the State and the State risked incurring a "double" damage claim in this case in the absence of Good Times, Ltd., and Cazana as defendants. Clearly, it would have been preferable to have all parties in one lawsuit, rather than having the State be made a defendant against plaintiff's claims in this lawsuit, and then bring an action against Good Times, Ltd., and Cazana in a separate lawsuit.

While the Trial Court's Order denying the State's motion for joinder does not set forth reasons, the State filed a separate action against Good Times, Ltd., and Cazana which was consolidated with this suit with the agreement of the parties. Approximately two months later, however, an Order was entered, stating "Pursuant to the Motion for Continuance requested by the State and Knoxville Association of Realtors" that all issues raised in the subject suit would be tried, and the issues from the other suit would be "held in abeyance until after the November 16, 2004 trial of Case No. 1-373-03." Thus it appears that it was the State's action that prevented the cases being tried at the same trial, and the State will not then be heard to complain that because of its own action,

it had to try its issues against Good Times, Ltd., and Cazana at a later time.

The State argues that the Trial Court erred in allowing photographs of construction in front of the restaurant to be admitted into evidence, because they were irrelevant and prejudicial. While the State objected to the admission of these photographs at trial, the record does not set forth the basis for the State's objection, nor the Trial Court's basis for allowing this evidence.

As the Supreme Court has explained:

Generally, the admissibility of evidence is within the sound discretion of the trial court. The trial court's decision to admit or exclude evidence will be overturned on appeal only where there is an abuse of discretion. A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'"

*Mercer v. Vanderbilt University, Inc.,* 134 S.W.3d 131 (Tenn. 2004)(citations omitted). The State argues that the photographs did not accurately depict the work being done by the State, when the photographs were introduced, however, plaintiff was asked if they "reflect[ed] the various stages of what happened after the State moved in to his property", and plaintiff responded that they did. The State has not shown clear abuse of discretion by the Trial Judge in allowing the photographs into evidence. *See, Heath v. Memphis Radiological Professional Corp.,* 79 S.W.3d 550 (Tenn. Ct. App. 2001).

Finally, the State argues that the Trial Court erred in denying its Motion for New Trial because the verdict was against the weight of the evidence and was the result of passion, prejudice, sympathy, caprice and/or confusion on the part of the jury. The State points to the verdict of $100,000.00, when the evidence of plaintiff's damages amounted to $98,800.00. While the evidence, as noted, did not match the verdict, the discrepancy was cured by the court's remittitur.

As we have previously stated, "On appeal, after denial of motion for new trial, this Court, in its review, does not weigh the evidence but considers only whether there is any material evidence to support the verdict, and in such review we are required to take the strongest legitimate view of all the evidence favorable to the plaintiff, disregard all to the contrary, and indulge all reasonable inferences to uphold the verdict." *Blalock v. Temple*, 276 S.W.2d 493, 496 (Tenn. Ct. App. 1954). Moreover, where the jury verdict has been approved by the trial judge, the jury's findings will be upheld if there is any material evidence to support it *See* Tenn. R. App. P. 13(d), *Brown v. Chesor*, 6 S.W.3d 479 (Tenn. Ct. App. 1999). In this case, there was material evidence to support the jury's verdict, and the jury credited the plaintiff and his expert's testimony regarding damages. The verdict as rendered and remitted is within the range of reasonableness. *See Thrailkill v. Patterson*, 879 S.W.2d 839 (Tenn. 1994); *Steele v. Ft. Sanders Anesthesia Group*, *P.C.,* 897 S.W.2d 283 (Tenn. Ct. App. 1994).

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal

assessed to the State of Tennessee.

_____
HERSCHEL PICKENS FRANKS, P.J.